84  517
34a 417

# H. SCHWABACKER *et al.*

*v.*

## ARCHIBALD RIDDLE.

1. PARTNERS—*liable for each other's torts committed as partners.* Partners are liable *in solido* for the torts of one, if committed by him as a partner and in the course of the business of the partnership; but if a partner commit a tort, not as a partner, but as an individual, in respect to a matter entirely foreign to the business of the partnership, the other partners are not liable.

2. SAME—*partners selling their interest, not liable for false representations in relation thereto by other partners.* Where one partner induces a stranger to purchase the interest of the other partners in a partnership business, by fraudulent representations, the parties selling are not liable for such false representations, unless they instigate or approve of them, or the partner making such representations is acting as their agent in making the same. The mere fact of their relation as partners will not make them liable.

3. MEASURE OF DAMAGES—*in suit by one partner for fraud in procuring him to execute firm note.* Where one has been induced, by false representations, upon the purchase of the interest of outgoing partners in a business, to execute a note, in the name of the new firm, for a greater amount than the invoice price, and afterwards, by reason of the insolvency of his partner in the new firm, he has the whole note to pay, he can only recover, in a suit for fraud and deceit against the party making the false representations, his proportion of the excess of the note over the value of the property actually purchased.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

Mr. D. MCCULLOCH, and Mr. JOHN MUCKLE, for the appellants.

Messrs. BARNES & MUIR, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Riddle sued Henry and Jacob Schwabacker, Newman, Ullman and Fosbender, in an action on the case, for fraud and deceit in the sale of a stock, consisting of wheat, corn, rye, oats, malt, cattle, hogs, highwines, hay and coal, pertaining to a distillery at Sparland, in Marshall county. Fosbender was not served with process. Riddle had a verdict, upon which the court gave judgment for $1814.62, and the defendants served with process, appeal.

The Schwabackers, Newman, Ullman and Fosbender had been in partnership in operating the distillery—Fosbender owning the realty and fixtures, and the others furnishing the money to carry on the business. Fosbender having become indebted to Riddle for $7500, and being, also, indorser on his paper for $200, payment of which he assumed, it was agreed between them that Riddle should have one-half of the real estate and fixtures of the distillery, in payment for these sums; that they should become equal partners in the distillery business, and buy out the Schwabackers, Newman and Ullman.

Riddle claims that he bought the interest that these parties had in the business, in consideration that they should be paid the amount the stock on hand should invoice; that the contract was made with them and Fosbender; that it was represented to him by them, that the invoice was $14,270.16, and that he relied upon the representation that this was the true amount, being entirely ignorant of what the invoice actually was, and he and Fosbender signed a promissory note for that amount, payable to the cashier of the First National Bank of Peoria, which was guaranteed by the Schwabackers, Newman and Ullman, and accepted by the bank in satisfaction of indebtedness of the old firm. The invoice actually made, it seems, was only $11,593.07, and so Riddle insists he was defrauded to the amount of the difference between that sum and the amount reported to him as the invoice—$14.270.16—for which the note was given, being $2677.09. The notes were assigned before maturity, and have been paid by Riddle.

Fosbender and Riddle prosecuted the partnership business, entered into by them, of running the distillery, from the 10th of December, 1870, the time the purchase was made from the Schwabackers, Newman and Ullman, until the following February, when Fosbender fled the country in consequence of his insolvency.

It is claimed by the Schwabackers, Newman and Ullman, that they had no negotiations whatever with Riddle; that they, becoming dissatisfied with Fosbender, had determined either to sell their interest to him, or buy his interest for themselves, and they, thereupon, proposed to Fosbender that they would step out of the concern and leave their investment, if they could be relieved from the payment of the amount due from the firm to the First National Bank of Peoria, which proposition Fosbender accepted; that the invoice was taken solely for their own convenience and information, and had no reference to the amount to be paid for their interest; that they knew of nothing being said between Fosbender and Riddle with regard to the invoice; that Fosbender and Riddle had agreed between themselves, before they had any communication with Riddle, and that Riddle's name to the note was required and accepted to make it good, so that they would be relieved from the debt it was designed to satisfy. They deny that they made any representations, themselves, to Riddle, to induce him to purchase, or that they knew of any representations made to him for that purpose by Fosbender.

We do not feel called upon to weigh the evidence and determine where, in our opinion, the preponderance lies. The evidence is conflicting, and we are not prepared to say, had the jury been properly instructed, that we should be inclined to disturb a verdict finding either way.

The court, at the instance of the plaintiff, gave these instructions, to which objections are urged:

"1. That a fraud committed by one partner, in the course of the partnership business, binds the firm, even though the other partners have no knowledge of or participation in the

fraud, and an action will lie against the firm in respect thereto.

"2.   If you find, from the evidence, that on and prior to the 10th day of December, 1870, the defendants were partners in carrying on the distillery business, and that defendant Philip Fosbender owned the real estate, and was to and did furnish the use of the same in said business, and that the other defendants furnished the capital with which to operate said distillery, and that such capital was invested in stock and other personal property in and about said distillery, and that the defendants were anxious to sell out their interest therein to the plaintiff, and the defendant Philip Fosbender, and had agreed upon the invoice value of said property, as the basis of said sale, and had an invoice of said property taken, and that the defendants alone knew of the amount of said invoice, and that the plaintiff had no knowledge of the same, except from the defendants or some one of them, as such partners, and that the defendants, or one or more of them, in order to induce the plaintiff to make such purchase and sign notes for the purchase price, falsely and deceitfully represented to the plaintiff that the notes were for the amount of the invoice price of the personal property, and that the plaintiff relied upon such representations, and thereupon made such purchase and signed notes therefor; and if you further believe, from the evidence, that the amount of the notes so signed exceeded the amount of the invoice price of said property $2677.10, and if you further find, from the evidence, that the plaintiff was compelled to, and did, pay the full amount of the said notes, and was defrauded out of the said sum of $2677.10 in consequence of the fraud and deceit of the defendants, or some one or more of them, as such partners, then you will find the issues for the plaintiff, and assess his damages at the amount of which he was so defrauded, with six per cent interest from the time he was injured.

"3.   If you find, from the evidence, that all the defendants were partners under the name and style of P. Fosbender & Co., and that the defendants, Philip Fosbender, Max Newman and

Jacob Schwabacker, or either of them, for the said firm, induced the plaintiff to purchase an interest in the partnership property, and to sign notes therefor, and in doing so knowingly made false representations, upon which the plaintiff relied, by reason of which the plaintiff was defrauded in manner and form as stated in either count of the declaration, then all said defendants, as such partners, are liable to the plaintiff for any injury he may have sustained, if any, by reason of such fraud, and it makes no difference, so far as the liability of the defendants is concerned, whether all of said partners had knowledge of, or participated in, said fraud."

The court also refused to give the following instruction, asked by the defendants:

" 3.   The jury are further instructed, that the defendants now on trial are not responsible for any fraud committed by Fosbender upon the plaintiff, unless they actively participated in the same, or unless, with the knowledge of such fraud committed by Fosbender, before the signing and delivery of said notes, they permitted the said plaintiff to be deceived into the signing and delivering of the same, by the fraud of said Fosbender, and took the same with the knowledge of such fraud."

There was some evidence of acts and declarations of Fosbender, before the jury, tending to show fraud and deceit in the sale to Riddle, with which the Schwabackers, Newman and Ullman were not connected, otherwise than by reason of what implication might arise from their having been his partners prior to the sale.

The doctrine is well settled, and has been frequently applied by this court, that partners are liable *in solido*, for the tort of one, if it were committed by him as a partner, and in the course of the business of the partnership; but if a partner commit a tort, not as partner, but as an individual, in respect to a matter entirely foreign to the business of the partnership, it in nowise binds others simply because they may, at that time, happen to sustain partnership relations towards him.

The Schwabackers, Newman, Ullman and Fosbender, were partners in operating the distillery, and any tort committed by Fosbender, as partner, in the course of that business, would, undoubtedly, have bound the other parties. But the selling of the *interest of a partner* in the property and business of the firm, is very different from conducting or operating the *firm business.* The sale necessarily works a dissolution of the firm, and what is sold is not what belongs to the firm, but to the individual selling.

While the Schwabackers, Newman, Ullman and Fosbender owned the assets of the firm as partners, the interest of each therein—that is, what each was entitled to have on dissolution of copartnership, and which measured the extent of his profits and losses, before dissolution—was his own interest, and not the common interest of all the partners. What was sold to Riddle, therefore, was an interest in which Fosbender had no ownership or right of control, merely as partner, and his contracts or declarations in respect thereto can, consequently, be binding upon the Schwabackers, Newman and Ullman, only to the extent it shall appear he is to be regarded as acting as their agent. If his acts and declarations may, from the evidence, reasonably be presumed to have been instigated or approved by them, they will be bound by them; otherwise, not.

It follows, that, in our opinion, the court erred in giving each of the foregoing instructions of the plaintiff, and in refusing the third instruction, as asked, for the defendant. The modification of the first of defendants' instructions was, also, for like reason, erroneous. The first of plaintiff's instructions, as an abstract proposition, is well enough; but it assumes a state of case that has no foundation in the evidence, and could, therefore, have served no other end than that of misleading the jury.

The other errors assigned by the defendants we deem it unnecessary to comment upon.

Plaintiff has assigned two cross-errors, to which our attention is invited. The first is, that the court erred in overruling

his motion for a change of venue. We might refuse to examine this, since he has furnished us with no abstract setting out his petition, notice, affidavit, etc., so that we may judge of their sufficiency. But we have gone to the record and examined it with some care, and we incline to the opinion that there is no error in the ruling in this respect. The application might have been made for the change, in vacation, at a much earlier day than it was made, and before the commencement of the term, and no reason is shown why this was not done.

The other ruling complained of, is, in giving defendants' seventh instruction:

" 7. If the jury believe, from the evidence, that said notes were signed by the plaintiff and Fosbender, as a partnership transaction, then the plaintiff can only recover in this action such a sum as he necessarily lost by reason of the fraud complained of in the declaration, but he can not recover any larger sum, although, by reason of the subsequent losses in business, he was compelled to pay the whole of said notes. The plaintiff's recovery, if any, must be limited to his proportion of the excess of said·notes over the value of the property actually purchased, although by reason of subsequent losses or mismanagement in business he was compelled to pay the whole amount thereof."

We see no objection to the instruction. So much of the loss as was sustained in consequence of the misplaced confidence in Fosbender's solvency alone, is most clearly not chargeable to the other parties. If appellee is entitled to recover, it is for the injury done him by the defendants, and not for injuries sustained in consequence of circumstances over which they had no control.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*