## THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY

*v.*

## J. WARD ELLIS, Admr. etc.

1. NEW TRIAL—*finding from evidence.* Where the evidence, as to the disputed facts of a case. is contradictory, it is for the jury to determine which side is most worthy of belief, and their finding in such a case must settle the controverted facts.

2. CROSS-EXAMINATION—*reading books to medical expert to test his knowledge.* Where a physician, as a witness, testifies to the symptoms of a disease of which a person died, whose life was insured, and pronounces it *delirium tremens,* induced by the use of intoxicating liquors, paragraphs from standard authors, treating of that disease, may be read to the witness, and he asked if he agrees with the author, on the cross-examination, as one of the means of testing his knowledge, and this is, in no just sense, reading such books to the jury. Great care should, however, be taken by the court to confine such cross-examination within reasonable limits, and to see that the quotations' read are so fairly selected as to present the author's views on the subject of examination.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. ISHAM & LINCOLN, for the appellant.

Messrs. SHOREY & SHAFFNER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The policy declared on was issued by the Connecticut Mutual Life Insurance Company, insuring the life of Milton T. Hamilton, since deceased. It contained a proviso, that in case the assured "shall become so far intemperate as to impair his health or induce *delirium tremens,* * * * this policy shall be void and of no effect." The pleas filed to the declaration were, 1st, general issue, 2d, a violation of a condition of the policy, by becoming so far intemperate as to impair the health of the assured, and 3d, a violation of a condition of the policy by becoming so far intemperate as to induce *delirium tremens* in the assured. The plea of the general issue was withdrawn by leave of court, and the trial was had on the issues made by the replications to the special pleas. On the first trial, the jury failed to agree and were discharged, but on the second trial, they found the issues for plaintiff and assessed his damages at the amount due on the policy. A motion made for a new trial was overruled by the court, and judgment rendered on the verdict. The insurance company brings the case to this court on appeal.

On the errors assigned, two principal objections are made in the argument against the judgment: First, the verdict is manifestly against the weight of the evidence, and, second, the court below erred in allowing medical books to be read before and to the jury, and to be used as evidence to contradict a witness. Other minor matters are discussed, but they are not deemed of sufficient importance to be remarked upon.

But a single issue was made on the trial, viz: whether the assured had been guilty of a violation of a condition of the policy by becoming so far intemperate in the use of intoxicating drinks as to impair his health or induce *delirium tremens.* On this branch of the case, the evidence is irreconcilably con-

flicting. A verdict either way, no error of law intervening at the trial, would not be disturbed, under the practice that prevails in this court. The attending physician diagnosed the disease of which the assured died as *delirium tremens,* induced by the intemperate use of alcoholic drinks. Other witnesses, who stated they were well acquainted with the personal habits of the assured, all say he was a man of intemperate habits. A physician, called as an expert in answer to a hypothetical question based on the witness' understanding of the testimony, pronounced the disease of which assured died as a typical case of *delirium tremens.* On the other hand, there were, perhaps, a greater number of witnesses who say they were well and intimately acquainted with assured, and that he was not addicted to the intemperate use of intoxicating liquors. Witnesses that were with him in his last sickness say the assured had no delirium until after he took the medicine prescribed by the attending physician. These latter witnesses are all non-professional, but they say the assured was, in the first place, afflicted with diarrhea and afterwards with congestive chills. It is certain, the assured, in his last sickness, had delirium, but whether it was induced by the use of intoxicating liquors or by the effects of hypodermic injections of morphine upon a system intolerant of that drug, was a question of fact fairly submitted to the jury, to be found as any other fact in the case. On the question of fact involved, it is not necessary to express an opinion as to the weight of the evidence. That was the province of the jury, and it was for them to determine, as to the testimony given by the parties, that which was most worthy of belief. This much may be fairly said,—there is quite as much evidence the assured died of congestive chills as that he died of *delirium tremens,* and that the delirium manifested was either the effects of medicine taken or of the disease itself. How the truth is can only be known from the finding of the jury, and that, we must regard as settling the controverted facts.

On the other point made, no medical books were read to the jury as evidence or for any other purpose, and it will not be necessary to discuss the admissibility of such evidence. But, on cross-examination of the attending physician, who made a diagnosis of the disease of which the assured died, and pronounced it *delirium tremens,* paragraphs from standard authors, that treat of that disease, were read to the witness, and he was asked whether he agreed with the authors, and that is complained of as error hurtful to the cause of defendant. The testimony of this witness was of the utmost importance, and certainly plaintiff was entitled to reasonable latitude in the cross-examination. The witness had given the symptoms of the disease with which the assured was affected and pronounced it *delirium tremens,* and as a matter of right, plaintiff might test the knowledge possessed by the witness, of that disease, by any fair means that promised to elicit the truth. It will be conceded, it might be done by asking proper and pertinent questions, and what possible difference could it make whether the questions were read out of a medical book or framed by counsel for that purpose. Ordinarily, the limits of cross-examination of a witness are within the sound discretion of the court, and, usually, the greatest latitude is allowable that can be consistently given, for the discovery of the truth. The witness in this case stated that he had read text books that he might be able to state why he "diagnosed the case as *delirium tremens.*" Assuming to be familiar with standard works that treat of *delirium tremens,* it was not unfair to the witness to call his attention to the definitions given in the books, of that particular disease, and asking him whether he concurred in the definitions. How could the knowledge of the witness, of such subjects, be more fully tested? That is, in no just sense, reading books to the jury as evidence, or for the purpose of contradicting the witness. The rule announced may be liable to abuse. Great care should always be taken by the court to confine such cross-examination within reasonable limits, and to see that the quotations read to the witness

are so fairly selected as to present the author's views on the subject of the examination.

That the cross-examination was in the presence and hearing of the jury, could not, of course, be avoided, as the witness was examined in open court.

No material error appearing in the record, the judgment must be affirmed.

*Judgment affirmed.*