122 225
125 177
122 225
128 421
128 554
129 410
122 225
140 52
122 225
147 274
122 225
156 427
156 430
156 431
122 225
160 117
122 225
f164 539
122 225
165 174

No. 13,516.

HESS v. LOWREY.

MALPRACTICE.—*Action Against Partners.—Death of Partner Pendente Lite.— Survival of Action.*—Where,pending suit against two physicians, partners, for damages for an injury alleged to have been caused by the negligent and unskilful manner in which they reset and treated the plaintiff's dislocated shoulder, one of the defendants dies, the action, while abating against the personal representatives of the deceased partner, may be prosecuted to judgment against the surviving partner.

SAME.—*Evidence.—Declarations of Physician.*—It was not error to permit the plaintiff to describe the acts and repeat declarations made to him by the physician, deceased, while resetting his shoulder and treating it afterwards.

SAME.—*Medical Examination of Party.*—It was not error to permit the plaintiff to exhibit his shoulder to the jury.

SAME.—*Physician Engaged in Other Occupation.—Evidence.*—Evidence to prove that the physician who set the shoulder was extensively engaged in farming at and prior to the time of the injury was competent as affecting his skill and knowledge in his profession.

SAME.—*Medical Examination.—When may be Properly Refused.*—Where the application for the medical examination of the plaintiff is not made until after the close of the plaintiff's evidence, and no reason is shown for the delay in making it, it will not be error to refuse the order, especially where the plaintiff offers to submit to a private examination as soon as the attendance of medical experts on his behalf can be secured.

EVIDENCE.—*Medical Books.—Reference to in Cross-Examination of Experts.*—It is proper in a cross-examination, in order to test the learning of an expert witness, to refer to books of approved authority upon the subjects under investigation.

INSTRUCTIONS TO JURY.—*As to Bias of Witnesses.—Propriety of.*—An instruction to the jury that " the credit and weight that should be attached to the testimony of a witness, depends upon his disinterestedness in the result of the suit, and his freedom from bias and prejudice. Wherever a witness is lacking in any of these respects it tends in a greater or less degree to weaken the force of his testimony," is of doubtful propriety.

From the Fayette Circuit Court.

*J. H. Mellett, E. H. Bundy, J. Brown* and *W. A. Brown,* for appellant.

*T. B. Redding, D. W. Chambers, J. S. Hedges* and *C. Roehl,* for appellee.

MITCHELL, C. J.—This action was originally instituted by Isaac Lowrey against Luther W. and Frank C. Hess, to recover damages for an injury sustained to the person of the plaintiff, alleged to have been caused by the negligent and unskilful manner in which the defendants, who were partners engaged in the practice of medicine and surgery, reset and treated the plaintiff's shoulder, which had been dislocated. Pending the action Luther W. Hess died, and the case proceeded to judgment against his personal representative and surviving partner, jointly. On appeal to this court the judgment was reversed. *Boor* v. *Lowrey,* 103 Ind. 468 (53 Am. Rep. 519, and note.) On the former appeal we arrived at the conclusion that even though the action was in form *ex contractu,* since the principal or only damages sought to be recovered grew out of an injury to the person, the action would not survive against the personal representative of a deceased partner. *Hegerich* v. *Keddie,* 99 N. Y. 258; *Ott* v. *Kauffman,* 68 Md. 56. The nature of the damage sued for, and not the nature of its cause, determines whether or not the action survives. *Cutter* v. *Hamlen,* 147 Mass. 471; 1 Chitty Pl. 101.

The case is here on a second appeal, and the question is now presented whether or not, the action having abated against the estate of the deceased partner, it can be prosecuted to judgment against the survivor?

That each partner is the agent of the firm while engaged in the prosecution of the partnership business, and that the firm is liable for the torts of each, if committed within the scope of his agency, appears to be well settled. *Champlin* v. *Laytin,* 18 Wend. 407 (31 Am. Dec. 382); *Tucker* v. *Cole,* 54 Wis. 539; *Fletcher* v. *Ingram,* 46 Wis. 191; *Taylor* v.

*Jones*, 42 N. H. 25; *Schwabacker* v. *Riddle*, 84 Ill. 517; Story Part., sections 107, 166; 1 Bates Part., section 461. " It follows from the principles of agency, coupled with the doctrine that each partner is the agent of the firm, for the purpose of carrying on its business in the usual way, that an ordinary partnership is liable in damages for the negligence of any one of its members in conducting the business of the partnership." Lindley Part. 299. Thus in *Hyrne* v. *Erwin*, 23 S. C. 226 (55 Am. Rep. 15), which was an action against two physicians for an injury resulting from the negligent and unskilful setting of a broken arm, it was held that the act of one, within the scope of the partnership business, was the act of each and all, as fully as if each was present participating in all that was done, and that each partner guarantees that the one in charge shall display reasonable care, diligence and skill, and that the failure of one is the failure of all.

It is contended, however, that if the appellant was liable at all, he was only liable jointly with his deceased partner, and that the action having abated as to the deceased partner, the case falls within the rule that where one or more of the joint plaintiffs or joint defendants dies, the action shall not thereby be abated if the cause of action survives, but if the cause of action is one that does not survive, then the death of either joint plaintiff or joint defendant abates the whole action. *Meek* v. *Ruffner*, 2 Blackf. 23; *Williams* v. *Kent*, 15 Wend. 360.

The general rule established by the cases is, that where several persons jointly commit a tort, for which an action in form *ex delicto* may be maintained, without reference to any contract relation between the parties, the plaintiff has his election to sue all or any one of those engaged in the wrongful act, even though the existence of a contract may have been the occasion or furnished the opportunity to commit the act complained of. But where the action is founded on a joint contract, and is, in substance, whatever its form may

be, to recover damages for a breach of the contract upon which the action is predicated, all those jointly liable must be sued in case all are alive and within the jurisdiction of the court. *Low* v. *Mumford,* 14 Johns. 426; *Weall* v. *King,* 12 East, 452; *Whittaker* v. *Collins,* 34 Minn. 299; 1 Lindley Part. 482; Bishop Non-Contract Law, section 521; Chitty Pl. 469. In a case like the present where the *gravamen* of the action is the breach of a contract, by the terms of which two persons undertook, as partners, to reset the plaintiff's shoulder, and to treat him with the skill and diligence ordinarily displayed by competent surgeons, and the action is not maintainable without referring to the contract, it may well be, even though the action be laid in tort, that the non-joinder of one of them would be ground for a plea in abatement. Collyer Part., section 732; Dicey Parties, 455. But a plea in abatement for non-joinder of parties must, in order to be good, show that the person alleged to be jointly liable, and not sued, is living and subject to the process of the court. *Dillon* v. *State Bank,* 6 Blackf. 5; *Wilson* v. *State,* 6 Blackf. 212; *Bragg* v. *Wetzel,* 5 Blackf. 95; *Levi* v. *Haverstick,* 51 Ind. 236; *Ferguson* v. *State, ex rel.,* 90 Ind. 38; Collyer Part., section 741; *Merriman* v. *Barker,* 121 Ind. 74. If in an action against partners to recover damages for a personal injury growing out of the breach of a contract, it is necessary, as in ordinary actions *ex contractu,* to join all the partners, it must follow that upon the death of one, notwithstanding the action may abate as to the deceased partner, the rule applicable to ordinary actions upon contracts against partners must obtain. At the common law the contract of partners was always treated as a joint agreement, but the firm creditors could not proceed against the estate of a deceased partner, because the death of one of the partners extinguished the contract as to him, leaving it in force as the separate engagement of the survivor. The legal remedy of the creditor was thereafter confined exclusively to the surviving partner, except as the common law was modified by

statutes, or by the principles of equity. *Sherman* v. *Kreul*, 42 Wis. 33.

The right to sue for claims due the firm, as well as the liability to be sued for claims against the firm, devolves exclusively upon the surviving partner. *Meek* v. *Ruffner*, *supra; McLain* v. *Carson*, 4 Ark. 164 (37 Am. Dec. 777; *Childs* v. *Hyde*, 10 Iowa, 294 (77 Am. Dec. 113) ; *Emanuel* v. *Bird*, 19 Ala. 596 (54 Am. Dec. 200); 2 Lindley Part. 665.

Upon the death of one partner the creditor has a right to collect his claim at law from the survivor ; or if the cause of action survives against the personal representative, to proceed in the manner pointed out by the statute against the estate of the deceased partner. *Ralston* v. *Moore*, 105 Ind. 243 ; *Kimball* v. *Whitney*, 15 Ind. 280 ; *Gere* v. *Clarke*, 6 Hill, 350.

If a partner dies pending an action against the firm the death being suggested on the record, the action does not abate, but may proceed to judgment against the surviving partner, unless the cause of action dies, not only as against the personal representative of the deceased partner, but as against the surviving partner also. *Williams* v. *Kent*, *supra;* Collyer Part., section 727 ; Pom. Rem. Rights, sections 250, 251 ; Bates Part. section 1055. When the damages sued for arise out of an injury to the person of the plaintiff, the cause of action dies with the person of either party ; but the cause of action dies only so far as it affects the the liability of the decedent, or his personal representative. Neither by the common law, nor under the statute, does the cause of action die as to a surviving partner, or defendant, who, as we have seen, remains liable for all claims against the firm. *King* v. *Bell*, 13 Neb. 409 ; 8 Wait Actions and Def. 502.

While the members of the firm were all alive each was liable *in solido* as principal, the firm being, in law, a single entity ; upon the death of one partner his liability was extinguished, but the surviving partner as the sole representa-

tive of the firm, continued liable. *Shale* v. *Schantz,* 35 Hun, 622.

It is only where the cause of action does not survive in favor of, or against either of the joint plaintiffs or defendants, that the death of one abates the whole action.

If the action is, as doubtless it should be, regarded as a suit *quasi ex contractu,* for damages for an injury to the person occasioned by the breach of a joint contract, the death of one of the defendants simply severed the joint liability and extinguished the claim against the decedent, while it continued in full force as to the survivor. If the action is regarded as purely in tort, as where the injury was wilful and intentional, then the liability of the defendants may be joint and several, and the death of one does not abate the action as to the other. Collyer Part. (6th ed.), p. 1079, note. The death of one partner in nowise affects the liability of the survivor, who, upon the happening of that event, becomes individually liable to make good the joint undertaking of both.

Ordinarily, in actions *ex delicto,* where the liability arises from the misconduct or wrongful act of the parties, each is liable for all the consequences, and there is no right to enforce contribution, but this rule does not apply between partners unless the liability resulted from a meditated or wilful wrong intentionally inflicted by the one seeking to enforce contribution. *Armstrong County* v. *Clarion County,* 66 Pa. St. 218 (5 Am. Rep. 368); *Pearson* v. *Skelton,* 1 M. & W. 504; *Jacobs* v. *Pollard,* 10 Cush. 287 (57 Am. Dec. 105); *Acheson* v. *Miller,* 2 Ohio St. 203 (59 Am. Dec. 663); *Bailey* v. *Bussing,* 28 Conn. 455; 4 Am. & Eng. Encyc. of Law, pp. 12–13; Lindley Part. 771.

That the cause of action died as to Luther W. Hess does not at all affect the question of the right of contribution between the survivor and his personal representative. The right of contribution grows out of the partnership relation and rests upon the implied obligation of each partner to con-

tribute in proportion to the liquidation of all partnership liabilities, unless the liability arose out of an intentional tort, committed by the partner asking contribution. That the right of contribution exists affords a persuasive reason for holding that the action may be maintained against the surviving partner.

From every point of view the conclusion follows that the cause of action did not die as to both partners because one member of the firm died, and that the proceeding to judgment against the survivor was not of itself erroneous.

The court permitted the plaintiff to testify as a witness in his own behalf, as a matter of right, and to describe the acts and repeat declarations made to him by Luther W. Hess, deceased, while engaged in resetting his shoulder, and while treating him afterwards for the injury sustained. It is insisted that this testimony was improperly admitted because the declarations were not made in the presence of the defendant, and for the further reason that the testimony falls within the prohibition of section 498, R. S. 1881. The declarations were made by a partner while engaged in the business of the firm, and they were, therefore, admissible on the ground that the law implies an agency on the part of each partner to bind the firm in respect to transactions pertaining to the business of the firm when the declarations are made during the progress of the partnership business to which they pertain. *Boor* v. *Lowrey, supra; Williams* v. *Lewis,* 115 Ind. 45, and cases cited (7 Am. State Rep. 403). After some hesitation we have concluded that the testimony does not fall within the prohibition of the statute. *Durham* v. *Shannon,* 116 Ind. 403 (9 Am. State Rep. 860).

As we have already seen, upon the death of Luther W. Hess, the plaintiff's cause of action died, became extinguished as to the decedent. The only cause of action remaining was that which existed against the appellant, and while the transaction with the decedent is incidentally involved, his estate is not concluded by the judgment in the

present case.   Even though the appellant may be entitled to enforce contribution from the estate, that right can not be regarded as settled by this judgment.

It was not error to permit the plaintiff below to exhibit his shoulder to the jury.   The jury were, after seeing the condition it was in, better able to apply the evidence of the witnesses.   It is settled by the decisions of this court, that evidence, such as that complained of, is admissible.   *Indiana Car Co.* v. *Parker,* 100 Ind. 181 ; *Louisville, etc., R. W. Co.* v. *Wood,* 113 Ind. 544, and cases cited ; *Hart* v. *State,* 15 Texas Ct. App. 202 (49 Am. Rep. 188).

It appeared at the trial that the plaintiff's shoulder had been reduced, or reset, principally by Dr. Luther W. Hess, the father of appellant.   For the purpose of affecting the knowledge and skill of the surgeon, who set the shoulder, the court permitted the plaintiff to prove by the cross-examination of the appellant that his father was extensively engaged in farming at and prior to the time of the injury and that he devoted a considerable share of his time to the management of several farms.   The appellant complains that this evidence tended to prove that Dr. Hess was wealthy, and that it was therefore incompetent, as tending to incline the jury to give enhanced damages.

The evidence was not admitted for the purpose of showing the relative pecuniary condition of the parties.   It would have been clearly incompetent for any such purpose.   It was, however, entirely competent as tending to show that one who undertook to perform professional services requiring peculiar skill and knowledge, as well as constant study and close application, was devoting himself principally to some other avocation.

After the plaintiff had closed his evidence in chief, and while the appellant was examining a medical expert as a witness, he asked the court to order the plaintiff below to submit to a private examination by the appellant's medical

experts. The court refused to make the order, the plaintiff having offered to submit to an examination in the presence of the jury, or to a private examination on the next morning, or as soon as he could secure the presence of his own expert witnesses.

It is undoubtedly true that the court may in its discretion in a proper case, if application is seasonably made, require the plaintiff to submit his person to a reasonable examination by competent physicians and surgeons when necessary to ascertain the nature, extent and permanency of injuries; but where the application is not made until after the close of the plaintiff's evidence, and no reason is shown for the delay in making the application, it will not be error to refuse the order, especially where the plaintiff offers to submit to a private examination as soon as the attendance of medical experts, on his behalf, can be secured. *White* v. *Milwaukee City R. W. Co.*, 61 Wis. 536 (50 Am. Rep. 154) ; *Miami, etc., Turnpike Co.* v. *Bailey*, 37 Ohio St. 104 ; *Schroeder* v. *Chicago, etc., R. R. Co.*, 47 Iowa, 375 ; *Shaw* v. *Van Rensselaer*, 60 How. Pr. 143 ; *Shepard* v. *Missouri Pac. R. W. Co.*, 85 Mo. 629 (55 Am. Rep. 390) ; *Atchison, etc., R. R. Co.* v. *Thul*, 29 Kan. 466 (10 Am. & Eng. R. R. Cases, 783) ; Thompson Trials, section 859.

Complaint is also made that the court erred in admitting in evidence extracts from certain books or treatises on surgery. It does not appear that extracts from the books were read in evidence, or admitted in evidence as such.

In the cross-examination of a medical expert, the witness was asked whether certain statements were not made by certain writers on surgery, the statement referred to being read from a book held by counsel as part of the question. It is recognized as a proper method of cross-examination, in order to test the learning of a witness, who testifies as an expert, to refer to books of approved authority upon the subjects under investigation. *City of Ripon* v. *Bittel*, 30

Wis. 614; *Connecticut Mut. Life Ins. Co.* v. *Ellis*, 89 Ill. 516; *Pinney* v. *Cahill*, 48 Mich. 584; *State* v. *Wood*, 53 N. H. 484; Rogers Expert Test., sections 181–182.

The opinion of a witness may be tested by a cross-examining counsel by reading from medical books. 2 Best Ev., pp. 882–884. Medical books may be read to the jury, not for the purpose of proving the substantial facts therein stated, but to discredit the testimony of experts who refer to books as authority for, or in support of, their opinions. *Pinney* v. *Cahill, supra.*

Among other things, the court charged the jury that "the credit and weight that should be attached to the testimony of a witness, depends upon his * * disinterestedness in the result of the suit, and his freedom from bias or prejudice. Wherever a witness is lacking in any of these respects, it tends in a greater or less degree to weaken the force of his testimony."

This instruction borders upon the very edge of propriety, and while it applies alike to the testimony of both parties, both having testified as witnesses, yet if it had been pointed out to us, or if we could discover that there was any serious conflict between the testimony of the appellant and any other witness, on any material point, we should feel constrained to reverse the judgment. Instructions, such as the one in question, have so often been the subject of animadversion that courts should not put their judgments in jeopardy by putting such charges in the record. *Union Mut. Life Ins. Co.* v. *Buchanan*, 100 Ind. 63 (82); *Dodd* v. *Moore*, 91 Ind. 522; *Woollen* v. *Whitacre*, 91 Ind. 502; *Kline* v. *Lindsey*, 110 Ind. 337, and cases cited. Without in anywise approving the instruction, since it was general, and may have been as injurious to one side as the other, we can not reverse the judgment in the absence of anything to indicate that it was especially applicable to the appellant.

Some of the other instructions are subjected to criticism.

We have considered the objections urged and do not find them objectionable.

The judgment is affirmed, with costs.

Filed Jan. 7, 1890; petition for a rehearing overruled Feb. 20, 1890.