[No. 14136. In Bank. — June 2, 1891.]

# FRANK FISHER, Respondent, v. THE SOUTHERN PACIFIC RAILROAD COMPANY, Appellant.

Negligence — Coupling Cars upon Mixed Train — Duty of Railroad Company — Care — Skill — Instruction. — In an action against a railroad company for damages for injuries received by a passenger upon a mixed passenger and freight train, through the alleged negligence of the servants of the company in coupling the cars, an instruction to the jury, asked by the plaintiff, in the language of section 2100 of the Civil Code, "that a railroad company carrying passengers paying fare must use the utmost care and diligence for their safe carriage, and must provide everything necessary for that purpose," is not erroneous because of the omission of the concluding words of the section, "and must exercise, to that end, a reasonable degree of skill."

Id. — Construction of Code — Diligence Required upon Mixed Train — Requirement of Skill. — Section 2100 of the Civil Code, which provides that a railroad company carrying passengers paying fare must use the utmost care and diligence, and must provide everything necessary for that purpose, and must exercise, to that end, a reasonable degree of skill, applies to all trains carrying passengers for hire; and in operating a train regularly carrying freight and passengers, the company is liable for the full degree of diligence enjoined by the statute; but the concluding provision requires, in addition to diligence, skill only in providing what is necessary to the safe carriage of passengers, and does not prohibit the use of a freight train for that purpose.

Id. — Conditions of Running Freight Train — Province of Jury — Negligence in Coupling Cars. — The different conditions attending the running of a freight train are proper to be considered by the jury in determining whether there has been negligence in coupling the cars, and they may consider the fact, if it be so, that in the coupling of loaded freight-cars violent jerks and jars are likely to occur and might happen without negligence.

Id. — Assumption of Risk by Passenger. — A passenger upon a mixed train assumes the extra risk necessarily incident to such trains, the carrier using such diligence and care as is required on passenger trains, so far as such care is possible and reasonably consistent with the freight business.

Id. — Evidence — Medical Expert — Use of Medical Works — Cross-examination. — The reading of extracts from medical works, and asking an expert medical witness if he agrees with the author, is not permissible on cross-examination, where the extracts do not contradict the evidence of the witness, and are evidently intended as evidence for the cross-examining party to sustain his theory of the case. Questions as to extracts from such works, on cross-examination, should be strictly limited to the one purpose of testing the competency of the witness as an expert, or the value of his opinions.

ID. — NEW TRIAL — EXCESSIVE DAMAGES.— The evidence of medical experts being conflicting as to the extent and permanency of the plaintiff's injury, and there being evidence tending to show that the injury was less serious than the plaintiff contended: *held*, that, under the circumstances attending the case, a verdict in plaintiff's favor for thirty thousand dollars damages was excessive, and the defendant is entitled to a new trial upon that ground.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial.

Upon the trial of the case there was a conflict between the medical witnesses as to the extent and permanency of the plaintiff's injury. It appeared in evidence that the jolt of the cars threw the plaintiff from his seat against the stove near which he was sitting, and he then fell backward. He claimed to have suffered a rupture, and also an injury to the chest and spine, as the result. One physician, who testified for the plaintiff, was of the opinion that there was a permanent spinal injury, while two physicians, who testified for the defendant, were of the opinion that the spine was not affected. The jury found a verdict in favor of the plaintiff for thirty thousand dollars. Further facts are stated in the opinion.

*W. L. Dudley*, for Appellant.

While common carriers must be held to the utmost degree of care, vigilance, and foresight, they are not required to use such a degree of vigilance and foresight as will be wholly inconsistent with the mode of conveyance adopted, and render its use impracticable. (*Tuller* v. *Talbut*, 23 Ill. 357; 76 Am. Dec. 696; *Indianapolis R. R. Co.* v. *Horst*, 93 U. S. 291; *Reber* v. *Bond*, 38 Fed. Rep. 822; *Chicago etc. R. R. Co.* v. *Hazzard*, 26 Ill. 373; *Oviatt* v. *Dakota Central R. R. Co.*, 43 Minn. 300.) The court erred in allowing the plaintiff to ask Dr. Woolsey, on cross-examination, whether he agreed with certain statements read to him by counsel from medical

works, when the works had neither been referred to nor relied upon by the witness, either in his cross-examination or examination in chief. (*People* v. *Goldenson*, 76 Cal. 348; *City of Bloomington* v. *Shrock*, 110 Ill. 219; 51 Am Rep. 678; *Knoll* v. *State*, 55 Wis. 249; 42 Am. Rep. 704.) As the evidence fails to show a case calling for vindictive or punitive damages, the jury must have consequently gone without the record, or in other words, have been moved by passion or prejudice, and therefore the verdict should be set aside. (3 Lawson's Rights and Remedies, 2169; *Goodno* v. *Oshkosh*, 28 Wis. 304; *Chicago* v. *Kelly*, 69 Ill. 475; *Milwaukee etc. R. R. Co.* v. *Arms*, 91 U. S. 489.) A comparison of the verdict herein with verdicts awarded by other juries in similar cases shows that the verdict in this case is so excessive that it must have been the result of passion or prejudice. In the following cases, verdicts were rendered far below the verdict in this case, for more serious injuries in most of the cases, which verdicts furnish a standard of average reason, discretion, and judgment in awarding damages: *Waldron* v. *St. Paul*, 33 Minn. 87; *Klutts* v. *R. R. Co.*, 75 Mo. 642; *Hanson* v. *R. R. Co.*, 62 Me. 84; 16 Am. Rep. 404; *Chicago* v. *Langlass*, 66 Ill. 361; *Chicago* v. *Mumford*, 97 Ill. 560; *Wardle* v. *R. R. Co.*, 35 La. Ann. 202; *Chicago* v. *Herz*, 87 Ill. 541; *Draper* v. *Baker*, 61 Wis. 450; 50 Am. Rep. 143; *Illinois Cent. R. R. Co.* v. *Parks*, 88 Ill. 373; *Carthage Turnpike* v. *Andrews*, 102 Ind. 138; 52 Am. Rep. 653; *Dalzell* v. *Long Island R. R. Co.*, 53 Hun, 633; *Stouter* v. *Manhattan R'y Co.*, 6 N. Y. Sup. Ct. 163; *Knapp* v. *Sioux R. R. Co.*, 71 Iowa, 41; *Texas Pac. R'y Co.* v. *Davidson*, 68 Tex. 370; *Osborn* v. *City of Detroit*, 32 Fed. Rep. 36; *Cummings* v. *National Furnace Co.*, 61 Wis. 603; *Atchison R. R. Co.* v. *Moore*, 31 Kan. 197; *Wedekind* v. *S. P. R'y Co.*, 20 Nev. 292; *Griffith* v. *Missouri Pac. R'y Co.*, 98 Mo. 168; *East St. Louis R'y Co.* v. *Frazier*, 26 Ill. App. 437; *Dallas etc. R'y Co.* v. *Able*, 72 Tex. 150; *Missouri Pac. R'y Co.* v. *Shuford*, 72 Tex. 175; *Walker* v.

*Erie R'y Co.*, 63 Barb. 260; *Boyce* v. *Cal. Stage Co.*, 25 Cal. 460; *Ehrgott* v. *Mayor*, 96 N. Y. 266; 48 Am. Rep. 622; *Belair* v. *Chicago etc. R'y Co.*, 43 Iowa, 662; *Deppe* v. *Chicago etc. R'y Co.*, 38 Iowa, 592; *Oties* v. *Cowles*, 7 N. Y. Sup. Ct. 251; *Texas R'y Co.* v. *Douglass*, 73 Tex. 325; *Solen* v. *Virginia etc. R'y Co.*, 13 Nev. 137; *Reed* v. *Chicago*, 74 Iowa, 188; *Marion* v. *Chicago etc. R'y Co.*, 64 Iowa, 568. In the following cases the courts have considered the damages awarded to be sufficient evidence of the existence of passion or prejudice in the minds of the jury: *Sioux City etc. R. R. Co.* v. *Finlayson*, 16 Neb. 578; 49 Am Rep. 724; *Pence* v. *Chicago etc. R'y Co.*, 79 Iowa, 389; *Heddles* v. *Chicago etc. R'y Co.*, 74 Wis. 239; *Louisville etc. R. R. Co.* v. *Fox*, 11 Bush, 495; *Kline* v. *C. P. R. R. Co.*, 39 Cal. 587; 37 Cal. 400; 99 Am. Dec. 282; *Missouri Pac. R. R. Co.* v. *Texas Pac. R'y Co.*, U. S. C. C., Feb. 4, 1890 (La.); *Collins* v. *City of Council Bluffs*, 32 Iowa, 324; 7 Am. Rep. 200; *Lapleine* v. *Morgan's etc. Co.*, 40 La. Ann. 661.)

*D. M. Delmas*, for Respondent.

Passenger carriers bind themselves to carry safely those whom they take into their coaches or cars, as far as human care and foresight will go; that is, for the utmost care and diligence of very cautious persons. (*Wheaton* v. *N. B. & M. R. R. Co.*, 36 Cal. 590, 594; Civ. Code, sec. 2100.) There was no error in allowing the questions to be put to Dr. Woolsey containing extracts from medical works, as it is the rule that, where a medical expert has referred generally to text-books as the basis of his opinion, it is not improper to read to him extracts from approved text-books, for the purpose of showing that he is mistaken in the basis of his opinion. (*Pinney* v. *Cahill*, 48 Mich. 584; *City of Bloomington* v. *Shrock*, 110 Ill. 219; 51 Am. Rep. 678; *Connecticut etc. Ins. Co.* v. *Ellis*, 89 Ill. 516.) The amount of the verdict was not excessive, nor is there anything to justify

the claim that it was the result of passion or prejudice. Before the appellate court can interfere on the ground of excessive damages, the verdict must be so plainly and outrageously excessive as to suggest at the first blush passion or prejudice or corruption on the part of the jury. (*Wheaton* v. *N. B. & M. R. R. Co.*, 36 Cal. 590; *Wilson* v. *Fitch*, 41 Cal. 385.) In the following cases verdicts equal to the one at bar, and awarded for similar injuries, have been deemed by courts neither outrageous nor even excessive: *Harold* v. *R. R. Co.*, 24 Hun, 184; *Chicago etc. R. R. Co.* v. *Holland*, 18 Brad. App. 418; *Graves* v. *City of Rochester*, 39 Hun, 5; *Choppin* v. *R. R. Co.*, 17 La. Ann. 19; *Phillips* v. *R. R. Co.*, 40 L. T., N. S., 813; 42 L. T., N. S., 6.

TEMPLE, C.— Appeal from judgment and order denying defendant's motion for a new trial.

Action for damages through alleged negligence of defendant, a common carrier of passengers for hire.

On the 29th of August, 1889, defendant was operating a railroad between Oakdale, in the county of Stanislaus, and Stockton. On that day plaintiff purchased a ticket at the office in Oakdale, and immediately boarded the train for Stockton. The train was composed of one empty box-car, eight empty gravel-cars, two loaded box-cars, and a passenger-car. It was a regular train, principally for freight, but habitually carried passengers, and tickets were always sold at the ticket-office for this train. It is shown to have been so run for a period of four years before the injuries complained of. At this time there were some fourteen passengers on the train.

At a place called Burnett's Station, where there was a gravel pit, the train made a stop to exchange its eight empty gravel-cars for nine loaded gravel-cars. To accomplish this, the engine, the empty box-car, and the gravel-cars separated from the other cars, ran up the main track past the switch, leaving the two loaded box-

cars and the passenger-car with brakes set, there being an up grade at this place. After getting rid of the empty cars, the engine with the empty box-car was coupled to nine loaded gravel-cars, and they were let down the grade by gravitation alone, without steam, to the part of the train which had been left on the grade with brakes set. A conductor and two brakemen were in charge of the train, but the conductor and one brakeman had ridden the empty cars into the pit, the other brakeman turned the switch to put the train back upon the main track, and then jumped upon the engine or tender, so that there were no brakemen on either part of the two portions of the train to be coupled, no conductor to superintend, and no person between the two parts to be coupled. There was what was called a left-hand curve, and the conductor could not see either the end of his portion of the train or the cars to be taken on. The fireman, from the left-hand side, could see, and gave signals to the engineer. The cars had to be let down the grade some seven hundred or eight hundred feet, and between the engine and the space were the nine gravel-cars and the empty box-car, about three hundred feet of the train.

Upon receiving the signal " one car," meaning that there was the length of one car between the parts to be coupled, the engineer, as he testified, put all the brakes on and left nothing undone. He had all necessary appliances in good order.

There was, however, a violent jar at the coupling, which threw the plaintiff from his seat, diagonally across the car, some three or four feet, hitting a stove with his left side. He fell upon his back and was partially unconscious for a time, receiving, as he claims, very serious injury.

The defendant claims that this was not a passenger train, but a freight train, with a caboose-car attached; that regular passenger-cars were run upon the road, for which plaintiff's ticket would have been good; that it

is more difficult to manage freight-cars, and the exigen-
cies of such a train expose it to some peculiar dangers,
and render the same care impracticable; and that it
should not be expected that there would be the same
completeness in equipment as on purely passenger
trains.

These views are presented as objections to an instruc-
tion, given at the instance of plaintiff, as follows: "The
court instructs you that the law of this state is, that a
railroad company carrying passengers paying fare must
use the utmost care and diligence for their safe carriage,
and must provide everything necessary for that purpose."
The language is taken from section 2100 of the Civil
Code, omitting the concluding words of the section:
" And must exercise, to that end, a reasonable degree of
skill."

It is claimed that these words constituted an impor-
tant qualification of the rule, rendering it incumbent
upon the defendant to provide, not every possible or
even the best possible contrivance for the purpose, but
only to exercise a reasonable skill to that end, and that
the instruction ignored in part the theory of the de-
fense,—1. That the jar resulted, not from carelessness,
but because the practical operation of this train in which
plaintiff chose to ride demanded that it be managed and
equipped not as a passenger but as a freight train; 2.
The jar was only such as was to be expected upon a
freight train; and 3. That the amount of care consistent
with the operation of such a train was exercised.

I know of no principle by which the statute can be
limited so as not to apply to all carriers of passengers
for hire.  If one insists on going by a train which does
not habitually carry passengers, a different rule may
prevail.  Of course the different conditions attending
the running of a freight train are proper matters to be
taken into consideration in determining whether there
has been negligence.  It was proper for the jury to take

into consideration the fact, if it were so, that in the coupling of loaded freight-cars such violent jerks and jars are likely to occur, and might happen without negligence; and also that the practical operation of the train required that it be equipped as a freight rather than as a passenger train; but certainly the increased difficulty did not justify any remission of diligence and care. This train regularly carrying freight and passengers, rendered the company liable for the full degree of diligence enjoined by the statute.

It cannot, I think, be held that the omitted clause, requiring the exercise of a reasonable degree of skill in providing everything necessary for the safe carriage of passengers, refers, applied to the facts of this case, to the use of the freight train for the purpose of carrying passengers. If so, it would seem to prohibit the use of such train altogether, if it is conceded that it cannot be made as safe for that purpose as a passenger train. The qualification is not, as counsel seems to contend, that only reasonable diligence need be used; but to require, in addition to diligence, skill in providing what is necessary.

Section 2101 of the Civil Code — the next section — enjoins the carrier to provide safe and fit vehicles, and declares he is not excused for default in this respect by any degree of care. Common sense teaches us that these sections must not receive a construction so absolute as to practically prohibit railroad passenger traffic, or such a useful and common convenience as a mixed or accommodation train; but to find any letting down of the standard of diligence, in the omitted clause, is to impart a meaning diametrically opposed to its manifest intent, which, as stated, simply adds to the requirement of diligence, skill in the use of it.

The reasonable rule would therefore seem to be that those who travel on mixed trains assume the extra risk necessarily incident to such trains or the traffic, the car-

rier using such diligence and care as the code requires on passenger trains, so far as such care is possible and reasonably consistent with the freight business.

The injury was not claimed to have resulted from the failure to provide everything necessary. The sole issue, as to negligence, was in regard to the manner of coupling the two parts of the train at Burnett's Station, and the jury were, in substance, so instructed, at the instance of plaintiff.

I cannot see, therefore, how the omitted clause could have helped the defendant, or that the instruction as given ignored or took from the jury the consideration of any evidence or argument rebutting the presumption of negligence created by plaintiff's evidence.

On cross-examination of Woolsey, a witness called as an expert by defendant, plaintiff's counsel was allowed, against the objection of defendant, to read statements from medical works, and to ask the witness if he agreed with the authors. This is assigned as error.

Plaintiff's counsel defends the ruling here, on two grounds: 1. That the witness, on his direct examination, testified to certain medical opinions and supported his statements by the assertion that they conformed to the authority of medical works; and he claims that the rule is, that if the witness, either in direct or cross examination, relies in any manner upon the authority of medical works, generally or specifically, it is proper cross-examination to confront him with the works upon which he relies, to show that his understanding of them is incorrect, or to contradict him; and 2. That it is proper cross-examination to test the competency of the witness as an expert, or the value of his opinions.

A careful examination of the evidence has convinced me that the rulings complained of cannot be defended upon either of these grounds, though the legal proposition be admitted.

As to the first, it is plain that some of the extracts

read have no reference to any opinions of the witness which he sought to sustain by a reference to medical writers, either generally or specifically, except in response to a direct question by plaintiff referring to such writers.

As to the second ground, it is not so plain. The value of an effective cross-examination as a means of showing the incompetency of a witness or his lack of integrity and the true value of his testimony can hardly be overrated; and this is true in a special sense as to expert testimony, where the party may choose from the body of a profession those whose opinions are most favorable. It is quite natural, and certainly common, for one called as an expert to enhance his authority by his power of self-assertion, and there is reason to fear that these opinions are not always as impartial and indifferent as a judicial utterance should be.

While it is to be regretted if in the proper exercise of the right of cross-examination it shall appear that certain medical writers of repute differ from the witness, and so a party will get the benefit of unsworn testimony, still this evil, unavoidable in the nature of things, is, in my opinion, not at all commensurate with that which would deprive a party in such a case of the best touchstone known to legal science, by which to estimate the value of testimony.

And if, on general principles, such questions are legitimate on cross-examination, I do not see how a party can be deprived of his right because such evil consequences may follow.

All the works on medical jurisprudence which I have examined seem to sustain this position, and some cases, although they are not uniform. (*Brodhead* v. *Wiltse*, 35 Iowa, 429; *Conn. Ins. Co.* v. *Ellis*, 89 Ill. 516; *Ripon* v. *Bittel*, 30 Wis. 614; *Pinney* v. *Cahill*, 48 Mich. 584; *State* v. *Wood*, 53 N. H. 484.)

But since consequences are likely to follow which ad-

mittedly should be avoided if possible, such examination should be strictly limited to this one purpose, for which only it can be permitted.

I think no fair-minded person can closely study this record without being convinced that the evidence was not put in with any such purpose. No doubt counsel offered it under the impression that it was justified as inconsistent with opinions which the witness had claimed were sustained by medical authorities. I have shown that the claim cannot be sustained on that ground. In fact, although the witness took issue with some statements read, they cannot fairly be said to contradict his evidence in any respect.

They were evidently intended as evidence for the plaintiff, to sustain his theory of the case, and not to affect the competency of the witness or the value of his testimony.

As it seems to me a new trial must be granted for this error, it becomes unnecessary to review the other assignments.

The judgment and order should be reversed, and a new trial granted.

FITZGERALD, C., and FOOTE, C., concurred.

THE COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and a new trial granted; and the court is further of the opinion that the amount of the verdict was excessive.

DE HAVEN, J., concurring. — I concur in the judgment. The court erred in permitting the attorney for the plaintiff, upon the cross-examination of the witness Dr. Woolsey, to read extracts from certain medical books, and then ask the witness whether he agreed with the same or not. (*Marshall* v. *Brown,* 50 Mich. 148; *City of Bloomington* v. *Shrock,* 110 Ill. 22; 51 Am. Rep. 678; Rogers on Expert Testimony, secs. 181, 182.) It is not

permissible, on cross-examination, to call the attention of such a witness to what is said on the subject to which he is testifying, by standard works, for the purpose of testing his general knowledge or competency as an expert. It has been held, however, that when an expert asserts that his opinion agrees with a particular author, it is not improper to call his attention to what that particular author says, for the purpose of contradicting him. But there was nothing in the evidence of Dr. Woolsey to justify reading to him, and in the presence of the jury, the extracts referred to, for any such purpose. I think, also, that as the evidence does not establish a case for punitive damages, the sum awarded by the verdict is excessive.