[No. 13025. In Bank. — September 14, 1889.]

## GEORGE M. TROUSCLAIR, RESPONDENT, *v.* PACIFIC COAST STEAMSHIP COMPANY, APPELLANT.

CONTRIBUTORY NEGLIGENCE—PLACE OF DANGER—WANT OF ATTENTION. —If a person, for purposes of his own, voluntarily places himself in a position of danger, and, while in such position, gives no heed to the danger, — pays no attention to it, — but allows his attention to be absorbed by what he happens to be doing, he is guilty of negligence, and cannot recover for an injury received in consequence of his being in such position, although the defendant also was guilty of negligence.

ID.—The above rule applies to one who stands beside a wharf thirteen inches from the outer rail of a railway upon the wharf (which rail he has just crossed, and which is in his plain view), and who neither looks nor listens for the approach of trains, and in consequence is injured by the running of a train in the ordinary way.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Olin Wellborn,* and *Henry J. Stevens,* for Appellant.

It was the duty of the plaintiff to exercise all the care that the reason and prudence of an ordinarily careful and prudent man would dictate under the circumstances; he did not do so, and his failure was contributory negligence. (*Dufour* v. *C. P. R. R. Co.*, 67 Cal. 322; *R. R. Co.* v. *Miller*, 25 Mich. 290; *R. R. Co.* v. *Houston*, 95 U. S. 697; *Flemming* v. *R. R. Co.*, 49 Cal. 256; *Hearne* v. *S. P. R. R. Co.*, 50 Cal. 482; *L. S. & M. S. R. R. Co.* v. *Miller*, 25· Mich. 290; Shearman and Redfield on Negligence, sec. 90.)

*Henderson & McDonald,* for Respondent.

The nonsuit was properly denied, as under the circumstances the question of contributory negligence was for the jury, and its verdict is conclusive. (*Schierhold* v. *N. B. & M. R. R. Co.*, 40 Cal. 447; *Needham* v. *S. F. & S. J. R. R. Co.*, 37 Cal. 410; *Dufour* v. *C. P. R. R. Co.*, 67 Cal. 322; *Robinson* v. *W. P. R. R. Co.*, 48 Cal. 422.)

HAYNE, C. — Action for damages for personal injuries; verdict and judgment for plaintiff; defendant appeals.

The defendant is a corporation owning and operating a wharf extending into the bay of San Diego, at which vessels land. Along the length of the wharf was a railroad track which was used for the purpose of transporting freight to the shore. On one side of this track was a space about seven feet, which was used as a passageway for travelers along the wharf. On this side was a landing for small boats, with steps going down to the water, and a boat-house which was rented by the defendant to a man who kept boats for hire. On the other side was a space of about thirteen inches between the outer rail and the edge of the wharf. On this side, about three hundred yards from the shore, was a raft moored to the wharf. There was some staging there, with steps down to the raft. The plaintiff must have been familiar with the general features of the place, for he testifies that he had "been going there for about three years."

On the day of the accident, the plaintiff had been fishing on the raft. While there, he accepted an invitation from one of his companions to go boating. The companion procured a boat and attempted to bring it up to the raft. He did not succeed in getting it close enough; and the boat drifted alongside the wharf. He then told the plaintiff to go upon the wharf and get down from there into the boat, which the plaintiff proceeded to do. The boat might have been brought up to the raft with slight trouble. The plaintiff himself testifies in this regard as follows: "I don't know what there was to obstruct the passage to the raft; he did n't get up close enough. I suppose if he had taken a run out and back again he might have come in. I don't recollect any obstruction to prevent his getting in." When the plaintiff got into the boat the bow had got under the wharf, with which the boat then made an angle. The mast was close up to the side of the wharf, and projected several feet above it. The companion was in the stern.

According to the plaintiff's story, he was engaged for ten or fifteen minutes in trying to push the boat out from the wharf. While so engaged, the train came backing out toward the end of the wharf at the rate of about "six or eight" miles an hour. When about forty yards from the boat, the lookout on the end of the train saw the mast and the plaintiff, and signaled the engineer to stop. The latter did not see the signal as soon as he ought to have done. And although when he did see it, he tried to stop, he was not able to do so before the place of danger was reached. The edge of the cars caught the mast and broke it in two. The plaintiff was struck by the mast, thrown against a cross-piece or "cap-head," on which the floor of the wharf rested, knocked overboard, and seriously injured.

The view between the place of the accident and the starting-point of the train was unobstructed. In this regard the plaintiff testified as follows: "Between me

and the point where these cars would start out was an open space; there was nothing to obstruct the view to me or to them.. *I might have been* obstructed by the canvas between me and them. I could not see the cars; I didn't know the cars were coming; *I had no thought to determine whether the man in the cars could see me or not;* I didn't know they were coming." "There was no train in sight when I got into the boat, that I recollect; if there was any train I didn't know it; *my mind was so fixed on the boat that I never paid any attention.* I did not notice any before I got into the boat." As above stated the lookout on the train (who was one of the plaintiff's witnesses, and no longer in the employ of the defendant) saw the plaintiff. He "could see his head." And it seems entirely clear that if plaintiff had looked he must have seen the train coming. Not only could he have seen it if he had looked, but he could have heard it if he had listened. One of his witnesses testified that "a train of that kind running out on that pier makes a great deal of noise and fuss. You can hear it from one end of the wharf to the other, — you often can, except on account of the wind; it depends whichever way the wind blows. . . . . A train could be very easily heard running, at the rate we were running, long before we got to where the man was at the mast." And the plaintiff himself testified that "there was scarcely no wind going." If he had seen or heard the train he could easily have saved himself by stepping back to the stern of the boat where his companion remained uninjured. But he neither looked nor listened. His mind "was so fixed on the boat" that he "never paid any attention."

It, therefore, appears from the plaintiff's own account that while seeking amusement and recreation he voluntarily placed himself in a dangerous position, — a position in which, unless care was taken, he would in all probability be injured by the running of the defendant's train in the ordinary way; that he did so although the

perfectly safe course of having the boat come up to the raft involved very slight exertion or delay; that while in such dangerous position he never thought of danger; he did not look; he did not listen; but allowed his entire attention to be absorbed by what he was doing. This seems to us to have been gross negligence. Suppose that a man should go to sleep upon a railroad track running in the middle of a highway, or should stop his vehicle on a crossing to converse with a friend, and pay absolutely no attention to the approach of trains,— would he have a valid claim if, while in such a position, a train should injure him? The answer to such a claim would be simple and obvious. It was his own fault to act in such a way, and but for such fault the accident would not have happened. In other words, his own negligence contributed directly and proximately to the injury. This seems to be a plain proposition, and the facts of this case are within it. But authority is not wanting. The case of *Glascock* v. *C. P. R. R. Co.*, 73 Cal. 137, is directly in point. There a person was killed while crossing a railroad track at a place where the view was unobstructed for two hundred yards. Although the engineer did not ring his bell or blow his whistle, as he should have done, it was held, in a suit brought by his administratrix, that the plaintiff was properly nonsuited, and Paterson, J., delivering the opinion, said: "Having good eyes, it was his duty to use them, at least to some extent, for his own protection, and his failure to do so would be contributory negligence and prevent a recovery, notwithstanding the negligence of the defendant in failing to ring the locomotive-bell or blow the whistle. . . . . If he looked, he saw, and having age and faculties to understand the dangers, is charged with a knowledge of them, and was bound to act upon that knowledge, as a prudent and cautious man would under the circumstances."

In the case before us it may be conceded, for the pur-

poses of the opinion, that there was negligence on the part of the defendant in having its track so near the edge of the wharf, and in having only two men in charge of the train, and in not having better appliances in the way of brakes. In view of the contributory negligence of the plaintiff, this is immaterial. So the fact, if it be such, that the defendant had no wharf franchise, and the fact that the bay was a public highway for boats, are immaterial. The want of a wharf franchise could only go to establish wrong on the part of the defendant, and not to excuse wrong on the part of the plaintiff. And the right to navigate the bay does not give immunity from the consequences of doing so negligently. It is certainly true that the plaintiff's conduct did not give the defendant a right to willfully or wantonly injure him. But there is no pretense that the injury was willful or wanton on the part of the defendant or its employees. The evidence does not show anything of the kind, and the jury expressly found to the contrary.

The plaintiff should have been nonsuited on his own statement. And, to say the least, his case was not strengthened by the evidence introduced by the defendant. In a case like this the fact that the jury viewed the locality makes no difference.

We therefore advise that the judgment and order denying a new trial be reversed, and the cause remanded for a new trial.

GIBSON, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order denying a new trial are reversed, and the cause remanded for a new trial.

WORKS, J., did not participate in the decision of the above cause.

BEATTY, C. J., dissenting.—I dissent. At the time defendant's motion for a nonsuit was submitted, it had

been made perfectly clear by the plaintiff's own testimony that he was giving no heed to the passage of trains along the wharf or pier when the accident occurred. He was neither looking nor listening,—was, in fact, taking no precaution whatever to avoid danger from that source, and was, therefore, guilty of contributory negligence if he knew or had reasonable grounds for apprehending injury from a passing train. But, was it clearly shown by plaintiff's testimony that he had such knowledge or grounds of apprehension? I cannot say that it was. He was not on the track or pier, but was in a small sail-boat on the bay, which, by the careless and unskillful management of his companion, had been drifted by the wind against the wharf, so that its bow was under and its mast was resting against the side of the pier, in which position it was held by the force of the wind or current so firmly that all their efforts were insufficient to disengage it. It makes no difference, it seems to me, that he entered the boat from the pier while it was in this situation.

Except in so far as that and previous visits to the pier might tend to prove knowledge on his part of the manner in which the pier and track were constructed, I think that after he was once fairly in the boat his subsequent conduct must be viewed precisely as if he had been sailing on the bay, and by accident or unskillfulness had been carried into the position in which defendant's train found him. The question then is, whether he knew or had reason to suppose that defendant's track had been so laid that its cars moving upon the rails would project beyond the edge of the wharf so as to come in contact with the mast of his boat. As to this he testified that he did not *know* that the track was so laid, and it appears to me he had no reasonable grounds to suppose so.

The wharf in question extends from the shore to the ship-channel, a distance of about twelve hundred feet

across the bay of San Diego,—a bay navigated by small sailing vessels, which are liable at any time to be drifted against the side of the pier; and certainly no one could presume that a track would be so laid upon it that cars in passing would impinge against the masts of boats lying alongside. In fact, it was shown that the cars first used on the track did not project beyond the edge of the wharf, but that wider cars were subsequently adopted, which projected twelve or fifteen inches, and that the rails were never moved in so as to render the wider cars harmless.

For these reasons I cannot say that the superior court erred in denying the motion for a nonsuit.