[L. A. No. 3012.   Department One.—December 17, 1912.]

## HOMER A. CLARK, Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant.

NEGLIGENCE—RAILROAD—CONTRIBUTORY NEGLIGENCE—VOLUNTARILY TAKING POSITION OF DANGER ON STEP OF PLATFORM.—An experienced locomotive fireman, traveling to the particular place of his employment on a regular passenger train of the railroad that employed him, is guilty of contributory negligence, if, in anticipation of jumping from the train at a roundhouse a considerable distance from its regular stopping place, he voluntarily placed himself on the lower steps of the platform of the car, holding on by the hand rails, at a time when he knew the train was rounding a double curve, and approaching a switch and going at a speed of thirty miles an hour, and while in such position was thrown to the ground as the result of the swaying of the car.

ID.—PROMISE OF ENGINEER TO SLOW UP PASSENGER TRAIN—EVIDENCE—WANT OF AUTHORITY IN ENGINEER.—In an action against the railroad to recover for the personal injuries so occasioned, it was error to allow the plaintiff to testify that the engineer of the train promised that he would slow up opposite the roundhouse to allow plaintiff to jump off, provided the train was on time, without first requiring proof that the engineer was authorized by the railroad to slow up trains for that purpose.

ID.—NEGLIGENCE OF ENGINEER IN MAKING OR FAILURE TO KEEP PROMISE.—The unauthorized promise of the engineer to slow up, not having been within his actual or ostensible authority, nor within the apparent scope of his duty, and his lack of authority having been known to the plaintiff, was inadmissible in such action as evidence of want of care by the engineer either in making the promise or in failing to keep it.

ID.—REBUTTAL OF CONTRIBUTORY NEGLIGENCE.—Evidence of such promise was not material in rebuttal of the plaintiff's contributory negligence in putting himself in such position at a time when he knew that the train was going thirty miles an hour and that it could not be slowed up enough to allow him to jump off.

ID.—PLEADING—FAILURE OF PROOF—VARIANCE.—Where the complaint alleged that the defendant negligently ran its trains· around the curve at a high speed, causing it to violently sway so as to break plaintiff's hold on the rods, whereby he was thrown from the car to the ground, the fact that the plaintiff failed to prove that the engineer has authority to slow up the train, made simply a failure of proof and not a variance.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

E. W. Camp, U. T. Clotfelter, M. W. Reed, and A. H. Van Cott, for Appellant.

Gray, Barker, Bowen, Allen, Van Dyke & Jutten, and Flint, Gray & Barker, for Respondent.

SHAW, J.—The plaintiff sued to recover damages for personal injuries alleged to have been caused by the negligence of defendant in the management of its passenger train. There was a verdict and judgment in favor of the plaintiff, from which, and from the order denying its motion for a new trial, the defendant appeals.

The answer denied the material allegations of the complaint and, as an affirmative defense, alleged that if the plaintiff suffered either or any of the injuries alleged in his complaint, the same were caused solely by his own carelessness and negligence.

We think, upon the plaintiff's own testimony, he was clearly guilty of contributory negligence sufficient to bar a recovery. He was a locomotive fireman and had been in the employ of the defendant for more than two years prior to the accident as an "extra man," being sent from place to place to act as fireman where there was a temporary vacancy. On the day of the accident he was directed to go from Los Angeles to San Bernardino to take a position there as fireman and had been given an order allowing him to ride to San Bernardino on a regular passenger train of the company. When nearing San Bernardino, in accordance with a promise which he said the engineer had made to slow up so as to allow him to jump off the train at the roundhouse eighteen hundred feet before reaching the station, he went out on the platform of the front car intending to get upon the lower step and jump therefrom when the train should slow up. When he reached the platform he noticed that the train was upon a double curve and was about to pass a switch leading to a "Y." He testified that it was then going at the rate of thirty miles per hour and that he knew it could not be stopped in time to allow him to jump off. Nevertheless he got down on the lower step and stood there with his hands holding the rods and with a small package of clothes swinging over his thumb. While he was in that position the force of the car swinging around the double curve threw his body first in toward the platform and then out from it with such force as to break his hold on the rods and throw him violently to the ground. It needs no argument to establish the proposition, that it is negligence for one to put himself in that position with a train going at that rate over such a track. The plaintiff had previously worked at the San Bernardino yard and was entirely familiar with the switch and the curves over which the train was going. He was also familiar with the speed of trains and knew that it would be unsafe to jump off. He had no orders to get off the train at that place, or in that way, it was no part of his duty at that time and he was under no compulsion to do so. He voluntarily placed himself in this dangerous position knowing the peril and he is clearly chargeable with contributory negligence. The accident occurred in October, 1909. The statute, declaring that damages may be recovered, not-

withstanding the contributory negligence of the person injured, was not enacted until 1911.

The court erred in allowing the plaintiff to testify that the engineer promised that he would slow up opposite the roundhouse to allow plaintiff to jump off, provided the train was on time, without first requiring proof that the engineer was authorized by the defendant to slow up trains for that purpose. The plaintiff testified that this train was a regular passenger train, that by the rules of the company it was required to run on schedule time and that it was at that time four minutes late. Not being ahead of time, there was no occasion for it to slow up. It is common knowledge that the running time and the stopping places of regular passenger trains upon a railway are controlled by schedules and are in charge of a train dispatcher who communicates his orders from time to time for the management of the train. If the engineer were allowed to modify the speed and slow up his train at will to allow passengers to jump off at places along the road, it is obvious that the schedule would often be greatly disarranged. The duty of the engineer is merely to run the engine and thereby to move and stop the train according to the schedule prepared for him and the orders of those who have authority to change it. It would be so far out of the ordinary course of business and so improbable in the nature of things that an engineer should have authority to make such agreements with passengers, that one who would claim an advantage against the company solely by reason of a promise by the engineer to slow up for such purpose, must be charged with the burden of proving that the engineer had authority to make the promise and carry it out.

The plaintiff contends that the promise to slow up, although unauthorized, was admissible as evidence of want of care by the engineer first, in making the promise, and second, in failing to keep it. This might be sound doctrine if the action were against the engineer alone. But the company can be held responsible for the negligent acts of its servants only when such acts are within the actual or ostensible authority of the servant, or within the apparent scope of his duty. There are, of course, numerous cases in which railroad companies have been held liable for such negligent acts, although it appeared that the acts were unauthorized, or were expressly forbidden. The failure to ring a bell or sound a

whistle at crossings, running at forbidden speed, and the like, are familiar examples. But in all these cases the test is whether the negligent act "was done in the particular business that the servant was employed to do." (*Cosgrove* v. *Ogden,* 47 N. Y. 257, [10 Am. Rep. 361].) "The master is not responsible if the wrong done by his servant is done without his authority and not for the purpose of executing his orders or doing his work." (*Howe* v. *Newmarsh,* 94 Mass. 57.) "The master's liability does not depend on the question whether the act was one which the master ought to have understood would be done by the servant, but rather upon the circumstances whether it was so far an incident to the particular service in which he was engaged, that it may be said to have been done in the line of his duty, and in furtherance of his master's business." (Wood on Master and Servant, sec. 280.) The engineer was not employed to slow trains, or promise to slow them, wherever passengers wished to get off, but to run trains from station to station on schedule time and under orders from those higher in authority. The promise was not in the line of his duty, or incident to the work he was set to do, or a part of it, and it was not made in execution of any order of the company or in furtherance of any duty resting upon him. The negligent slowing of a train by the engineer without authority, might, of course, cause an injury to some person, for which the company would be liable in damages. But this would not be so if the person injured was one who knowing the lack of authority, had procured from the engineer the promise to slow up at that place. The mere fact that he was the engineer does not justify third persons in taking such promise on the assumption that he has such authority, nor make such promise the act of the company.

It was not material in rebuttal of the contributory negligence shown. It did not tend to disprove the negligent act which contributed to his injury. At the time he got down upon the step, he says he knew that the train was going thirty miles an hour and that it could not be slowed up enough to allow him to jump off. He therefore knew that the promise was not to be and could not be performed, and he cannot claim that he put himself in the perilous position on the bottom step, which was his act of negligence, in reliance upon

the promise, or in the expectation that it would be fulfilled. It therefore furnished no excuse for his negligent act.

The defendant's claim that there is a variance between the negligence charged and that which the plaintiff sought to prove, is not tenable. The charge was that the defendant negligently ran its trains around the curve at a high speed, causing it to violently sway, jerk, and jolt so as to break plaintiff's hold on the rods, whereby he was thrown from the car to the ground. If the promise, which the plaintiff testified the engineer had made, had been within the scope of the engineer's duty or authority, the failure to keep the promise and the running of the train at a high rate of speed at the place where he had promised to slow up, would have constituted negligence on the part of the defendant, within the terms of the charge. The fact that the plaintiff failed to prove that the engineer had such authority, made simply a failure of proof, and not a variance.

Because of the errors above set forth it is necessary to reverse the judgment and order.

The judgment and order are reversed.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.