[Civ. No. 3566. Third Appellate District.—December 10, 1928.]

KATHERINE F. GRASSIE et al., Appellants, v. AMERICAN LaFRANCE FIRE ENGINE COMPANY (a Corporation) et al., Respondents.

Morin, Newell & Brown and Duke Stone for Appellants.

Lucius K. Chase and Lucius F. Chase for Respondents.

PRESTON (H. L.), J., *pro tem.*—The plaintiffs brought this action to recover damages for the death of William S.

Grassie, which they allege was caused by the negligence of defendants.

The case was tried before the court sitting with a jury, and the jury returned a verdict in favor of the defendant and judgment was thereupon entered. From this judgment the plaintiffs prosecute this appeal.

Mr. Grassie was killed when a fire-engine, upon which he was riding, owned and operated by the defendant American LaFrance Fire Engine Company, collided with a telegraph pole, during the time said fire-engine was making a test run. The specific negligence alleged in plaintiffs' complaint is as follows: "The said defendant (American La-France Fire Engine Company) by its agents and servants . . . did procure said W. S. Grassie to mount said apparatus, occupy a seat, and they did then drive said apparatus rapidly in a westerly direction along Mariposa Street at a high rate of speed and in the vicinity of Marengo Avenue, approached a double curve at a high, unlawful and reckless rate of speed. They did fail to operate said machine on the right-hand side of the highway, but did operate and drive said machine upon the center and also upon the left-hand side of a highly crowned highway, and by reason of said high speed, and by reason of the operation of said vehicle in the wrong portion of the highway, and a portion not designed to accommodate vehicles traveling at a high speed in a westerly direction, did fail to properly control said vehicle and did recklessly and negligently drive and propel said vehicle in a tangent from said curve, which was a double curve, across certain parallel railway tracks, and over and against a certain telephone pole, against which said apparatus came in contact. That by reason of the collision with said pole, said W. S. Grassie was crushed, suffering grievous bodily injuries, solely from the effect of which he died. . . . "

The answer of the defendants raised several defenses, among them being: (a) That there was no negligence on the part of either of the defendants; (b) That the accident occurred solely as a result of the negligence of the deceased, in that his elbow interfered with the arm of the driver, causing the driver momentarily to lose control of his machine, resulting in the accident; (c) That even assuming that defendant was traveling in excess of the legal

speed, deceased was contributorily negligent in that, having knowingly placed himself in a dangerous position in riding on the fire-engine as an observer on a test run made at the same speed as would generally be made in going to a fire, he assumed the risk ordinarily incident to such a run; (d) That even assuming defendants' negligence, and assuming also that no risk was assumed by deceased, or by assuming that defendants were negligent beyond the risk assumed by deceased, nevertheless recovery was barred by reason of the contributory negligence of deceased, in that he held the arm of the driver with his elbow and thus caused the accident.

The facts are these: Altadena is an unincorporated residential town in Los Angeles County. The board of supervisors of Los Angeles County had, prior to the death of William' S. Grassie, which occurred on March 17, 1924, organized what is known as the ''Altadena County Fire Protection District,'' which included the town of Altadena. On or about the 25th of February, 1924, said board of supervisors had made arrangements to purchase from the defendant American LaFrance Fire Engine Company one fire-engine for the Altadena district. Some of the citizens of Altadena had suggested to the officers of the Altadena County Fire Protection District that two fire-engines would be required for the protection of the district. The county fire department was opposed to the purchase of two engines, claiming that one engine placed as nearly in the center of the district as possible would afford ample fire protection. To determine the question, Mr. Johnson, deputy chief of the county fire department, arranged with the defendant American LaFrance Fire Engine Company to take a fire-engine, such as the district intended to purchase, to Altadena and to make test runs with it from the central portion of the district to the outlying territory. The fire-engine was to be run on these tests at the same rate of speed that fire-engines ordinarily travel in going to a fire. Pursuant to this arrangement, the defendant American LaFrance Fire Engine Company sent a fire-engine from Los Angeles to Altadena in charge of defendant George Kenley, who was the delivery engineer of the defendant company. Mr. Kenley drove this engine to a point near the center of the district and was there met by a com-

mittee of citizens of Altadena, among whom was the deceased, William S. Grassie. The defendant George H. Herold, the sales manager of the defendant company, and a Mr. Barker, the battalion chief of the county fire department, were also present. Several test runs were made with the engine, running from a garage located about in the center of the district to the outlying portions of the district in several directions. On these runs, Mr. Herold, Mr. Barker, and a Mr. Graham were passengers. Mr. Graham was president of the citizens' committee. After several runs had been made Mr. Graham had to leave and requested the deceased, Mr. Grassie, to take his place on the engine and ride with the driver and observe the time that the engine made in making the test runs. Up to this time all the tests had been made to the east boundary of the district. The engine was now to make a test run from the same starting point to the west boundary of the district. Mr. Barker, the battalion chief and an employee of the county of Los Angeles, seeing the deceased start to get on the rear of the engine, requested him to take the front seat by the side of the driver, which was done. Mr. Kenley was the driver of the engine; Herold and Barker were also on the engine. The streets were cleared of traffic for the run. The engine traveled up Lake Street and turned on to Mariposa Street and proceeded down that street at a speed of between thirty and thirty-five miles an hour. There were several curves in the street. The first curve was a curve to the left and the second curve was a curve to the right. The engine approached the curves from the east and negotiated the first curve to the left without difficulty at a speed of about thirty miles an hour, and reached the second curve at a speed of twenty to twenty-four miles an hour, but instead of fully making the right curve the engine left the road, went through a fence for a distance of about seventy-five feet and struck a telephone pole on the right of way of the Pacific Electric Railroad, throwing the deceased from his seat on the fire-engine and instantly killing him.

While the evidence is somewhat conflicting on the point, there was substantial testimony to the effect that before the second or right-hand curve was reached, and while on that curve, the driver of a vehicle approaching from the

east could see ahead a distance of 350 to 500 feet, and that the curve could be made with the engine at a speed of thirty miles an hour with safety. The engine was a right-hand drive. Mr. Kenley, the driver of the truck, testified that as he started to turn it to the right, Mr. Grassie's body swayed toward him and Mr. Grassie's elbow came over his left arm, applying a pressure and preventing him from turning the steering-wheel to the right to take the curve.

Appellants make this contention: "A reversal of this case is sought on the ground that the court misdirected the jury as a matter of law, principally on the ground that the court directed the jury as a matter of law that deceased was at the time in a joint undertaking or enterprise with the defendants and that any negligence of the defendants was, therefore, chargeable to the deceased. . . . There is no question of assumption of risk involved in this case. It was a clear case of the deceased being an invited guest and, therefore, neither the assumption of risk or joint adventure had anything whatever to do with the case."

The court did not instruct the jury that, as a matter of law, the deceased was engaged in a joint enterprise, but did instruct the jury in effect that if it found that Mr. Grassie participated in a test run of a fire-engine, made at the same rate of speed at which a fire-engine ordinarily travels to a fire, and that he made no objection to the speed, that he assumed the risk of the dangers resulting from traveling at a speed faster than the limit allowed by law, provided the speed was such as was used in going to a fire.

These instructions are based entirely upon the familiar principle of law stated in 19 California Jurisprudence, page 589, as follows: "One who, for purposes of his own, voluntarily places himself in a position of danger, assumes the risks ordinarily incident to such a position, and must exercise a *quantum* of care commensurate with the additional danger." (See, also, *Graff* v. *United Railroads*, 178 Cal. 171 [172 Pac. 603]; *Morgan* v. *Los Angeles Pacific Co.*, 13 Cal. App. 12 [108 Pac. 735]; *Roberts* v. *Sierra R. R. Co.*, 14 Cal. App. 180 [111 Pac. 519, 527]; *Trousclair* v. *Pacific Coast Steamship Co.*, 80 Cal. 521–524 [22 Pac. 258]; *Fisher* v. *Southern Pacific Co.*, 89 Cal. 399 [26 Pac. 894];

*Clark* v. *Atchison, Topeka & Santa Fe R. R. Co.,* 164 Cal. 363 [128 Pac. 1032].)

▮ Appellants contend that deceased was an invited guest of the defendants. We are unable to find in the record any evidence that any of the agents or employees of the fire-engine company invited deceased to become a passenger on this fatal run. Mr. Graham, the president of the citizens' committee, requested deceased to make the trip, and Mr. Barker, an employee of the county, told him what position to take on the engine. However, it seems to us to be entirely immaterial whether Mr. Grassie was an invited guest or not. Mr. Grassie knew that the engine was going to make a run just the same as if it was going to a fire; he also knew that fire-engines going to a fire traveled at a high rate of speed, and he knew the condition of the streets over which the run was to be made. Notwithstanding all these facts, Mr. Grassie voluntarily assumed the dangerous position of a passenger on this fire-engine on this test run.

Under these circumstances, we hold that Mr. Grassie assumed the risk ordinarily incident to that dangerous position, irrespective of his status, and the defendant fire-engine company was not liable for any injury sustained by him *arising from the risks ordinarily incident to the dangerous position which he had voluntarily assumed.* Manifestly, a passenger upon a fire-engine going to a fire is not in a safe place. ▮ It was, therefore, incumbent upon Mr. Grassie, in the exercise of the due care which the law always exacts, to take greater precautions for his own safety than if he were a passenger in an ordinary automobile. Upon the other hand, the fire-engine company was only under obligation to run at the same rate of speed and use the same degree of care and caution that fire apparatuses usually run and operate in traveling to a fire. (*Kelly* v. *Santa Barbara R. R. Co.,* 171 Cal. 415 [Ann. Cas. 1917C, 67]; *Clark* v. *Atchison, Topeka & Santa Fe R. R. Co., supra.*)

Appellants rely upon the case of *Curran* v. *Earl C. Anthony, Inc.,* 77 Cal. App. 462 [247 Pac. 236]. The facts of that case are entirely different from those in the case at bar. In that case the plaintiff merely went riding in a touring car with the salesman to demonstrate the auto-

mobile to a prospective purchaser and was killed through the negligence of the salesman. The widow of the deceased brought an action for damages against the salesman and Earl C. Anthony, Inc., the owner of the car, and recovered a judgment against both. On appeal it was contended that deceased was engaged in a joint enterprise with the salesman. The court held, under the facts, that deceased and the salesman were not engaged in a joint enterprise within the meaning of the law of negligence. The question of deceased assuming a dangerous position was not there involved.

Appellants further contend that the court erred in giving certain other instructions. We have examined all the instructions given, and, taken as a whole, they fully and fairly state the law upon all the issues involved.

We think the judgment was correct under the facts and the law and should be affirmed, and it is so ordered.

Plummer, J., and Finch, P. J., concurred.