[Civ. No. 10619.   First Appellate District, Division One.—September 29, 1939.]

ALICE WEAVER et al., Respondents, v. SHELL COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

714

Redman, Alexander & Bacon and Herbert Chamberlin for Appellants.

Vincent W. Hallinan and James H. Gillard for Respondents.

WARD, J.—The defendants, Shell Company of California, a corporation, and Alfred H. Bodilly, appeal from a judgment upon a verdict awarding damages to plaintiffs, heirs at law of one Lincoln Weaver.

The decedent Weaver was an employee of the Pacific Gas and Electric Company in charge of a gasoline oil room or filling station servicing that company's cars. The storage gasoline for this station was kept in an underground tank, equipped with one valve inside of the station and another valve at the end of the tank outside of the station, extending under the south wall of the building. Appellant Bodilly was the driver and operator of an automobile truck, equipped with a tank, used to deliver gasoline to customers of the Shell Company. On the date of the accident, in making a delivery to the above filling station, Bodilly connected a hose from the tank on his truck to the outside filling stem of the underground tank and proceeded to fill the same. During the course of such delivery an explosion occurred, gasoline became ignited and Weaver received severe burns which resulted in his death.

The complaint alleged that the explosion and ignition occurred through the negligence of defendants in failing to equip the truck with proper devices to prevent the flowing gasoline from coming into contact with inflammatory substances, and further, that defendants failed and omitted to carefully estimate and control the flow of gasoline into the underground tank, thereby allowing the same to overflow and ignite. It was also alleged that defendants failed to provide means for extinguishing the fire.

The appeal is from the fifth trial of this case. The first and third trials resulted in jury disagreement. In the second, fourth and fifth trials the jury returned a verdict in favor of plaintiffs. A new trial was granted following the first verdict for plaintiffs and the order granting the new trial was affirmed on appeal. (*Weaver* v. *Shell Co. of California,* 129 Cal. App. 232 [18 Pac. (2d) 736].) The judgment following the verdict on the fourth trial was reversed on appeal. (*Weaver* v. *Shell Co. of California,* 13 Cal. App. (2d) 643 [57 Pac. (2d) 571].)

On each trial the vital issue was the cause of the fire. On the fourth trial plaintiffs relied upon the doctrine of *res ipsa loquitur*. On the present trial that doctrine was eliminated.

In *Weaver* v. *Shell Co. of California,* 13 Cal. App. (2d) 643, 646 [57 Pac. (2d) 571], the court, after stating the contentions of the respective litigants, said: "Further, they [defendants] claimed that the electric light wires and the wires connected with the heating stove, all of which were contained in the oil room controlled and operated by the Pacific Gas and Electric Company, were out of repair and that they emitted the sparks that caused the fire. . . . Bodily, the driver of the truck, testified to facts supporting the theory of the defendants. There were conflicts in his testimony. But no witness contradicted any material portion of his testimony. . . . Whether that flowing gasoline was blown out by the explosion or whether the defendant Bodily spilled it and later it was ignited, spread and did the damage, was the real issue in the case. As 'stated there was no direct evidence thereon. The proof, if any, rested on the indirect evidence. The question as to what rules regarding indirect evidence should be applied and followed by the jury therefore became of vital importance in the trial. The plaintiffs relied on the benefits of the *res ipsa loquitur* doctrine. Without the appli-

cation of that doctrine to the case, we think it is clear from what we have said above that the judgment lacks evidentiary support and as will presently appear we think that doctrine was inapplicable.'' The decision further stated that there had been misconduct on the part of plaintiffs' attorney and on account thereof ''the rights of the defendants were greatly prejudiced and that it cannot be said they had a fair trial''. No claim of similar, or any, misconduct is presented upon this appeal.

■ The decision of the appellate court on the appeal in the fourth trial did not direct the entry of a judgment for defendants, but was unqualified, and therefore the issue of the sufficiency of the evidence was properly presented to the fifth jury. (*Ferran* v. *Mulcrevy*, 9 Cal. App. (2d) 129 [48 Pac. (2d) 984]; *Gallichotte* v. *California Mutual Building & Loan Assn.*, 23 Cal. App. (2d) 570 [74 Pac. (2d) 73, 535].)

■ As to the law of the case, we are confronted with the single question whether or not the decision by the appellate court on the appeal from the fourth trial is the law of the case on this appeal as to the sufficiency of the evidence. Unless the evidence in the present trial is found to be substantially different in a material respect from that of the fourth trial, we must hold that the scales tip in appellants' favor. (*Sheets* v. *Southern Pac. Co.*, 1 Cal. (2d) 408 [35 Pac. (2d) 121]; *Estate of Baird*, 193 Cal. 225 [223 Pac. 974]; *Haase* v. *Central Union H. S. Dist.*, 27 Cal. App. (2d) 319 [80 Pac. (2d) 1044].) When confined to the ''sufficiency of the evidence'', the rule of the law of the case may not be extended to be an estoppel when new material facts, or evidence, or explanation of previous evidence appears in the subsequent trial. (*Hoffman* v. *Southern Pac. Co.*, 215 Cal. 454 [11 Pac. (2d) 387]; *Erlin* v. *National Union Fire Ins. Co.*, 7 Cal. (2d) 547 [61 Pac. (2d) 756]; *Mattingly* v. *Pennie*, 105 Cal. 514 [39 Pac. 200].) In *Rasmussen* v. *Fresno Traction Co.*, 15 Cal. App. (2d) 356 [59 Pac. (2d) 617], the court said: ''Since the doctrine of the law of the case rests upon the existence of error it is not favored and it rarely applies to matters of evidence.''

On the fourth trial defendants presented evidence tending to show that the fire originated in the oil room and ''flashed out''; that there was ''no overflow'' and that the ''fault'' was not due to either the defendant company or its employee

Bodilly. They concede that on the fifth trial respondents produced "additional, new and different evidence", but contend that such evidence was merely cumulative to evidence of the same class or purpose introduced on the fourth trial. To a large extent we find this to be true, but it appears that new evidence was also inserted in the record substantially different in a material respect and tending to supply a deficiency in plaintiffs' evidence as previously presented. Six witnesses appeared in this case whose evidence was not presented upon the former trial and evidence was introduced tending to prove that the cause of the fire was scientifically demonstrable and that defendants negligently permitted the gasoline to overflow.

In the determination of the question whether or not the proof in a case is substantially the same as embodied in the opinion, the decision of the appellate court is controlling as the law of the case. It must be assumed that the facts set forth in the opinion are correct. It is conceivable in some cases that it may be necessary to compare the record of the two trials, but this is not necessary if evidence appears in the second trial that admittedly was not given in the first. If such evidence is upon a material point, the evidence in the two trials is different upon a substantial, material, factual issue, in which event the first decision ceases to be the law of the case.

Reference to made in *Weaver* v. *Shell Co. of California*, 13 Cal. App. (2d) 643 [57 Pac. (2d) 571], to the claim of defendants that the electric light wires and the wires connected with the heating stove, all of which were contained in the oil room controlled and operated by the Pacific Gas and Electric Company, were out of repair and that they emitted sparks that caused the fire. New evidence was introduced by plaintiffs upon the present trial that originally the electric wiring in the oil room had been inadequate to supply sufficient current to certain fixtures, but that prior to the time of the accident new wiring had been installed in vapor proof conduits. The extent to which the wiring, including the connections to the desk lamp and the water heater, was vapor proof, was a question of fact for the jury to weigh, but the evidence relative to the "vapor proof" wiring in the oil room was new and substantial evidence upon a material issue. In addition, the evidence on the fourth trial was strengthened by evidence

on the fifth that the fire could not have been caused by electric wires connected with the water heater in the garage, or the machinery in the machine shop, or by overhead trolley wires on the street outside the building, or by automobiles being serviced by Weaver or around the premises, or by apparatus used by decedent in making the immediately previous deliveries of gasoline. Other evidence on the fifth trial amplified and strengthened the testimony given on the fourth and justified the inference that a static spark generated by gasoline running through the hose was the cause of the fire. The evidence introduced was sufficient to sustain the present verdict. It was not identical with the evidence on the fourth trial and is of a degree sufficient to meet the test that it is not substantially the same, but on the contrary different in a material respect. (*Estate of Baird, supra; Klauber* v. *San Diego St. Car. Co.,* 98 Cal. 105 [32 Pac. 876] ; *Erlin* v. *National Union Fire Ins. Co., supra; Timm* v. *McCartney,* 30 Cal. App. (2d) 241 [85 Pac. (2d) 920].)

■ It is the general rule that it is improper to receive opinion evidence upon ultimate questions of fact which should be decided by the jury. (*Sim* v. *Weeks,* 7 Cal. App. (2d) 28 [45 Pac. (2d) 350].) ■ On the fifth trial two expert witnesses were introduced by plaintiffs to testify upon matters not ordinarily comprehended by lay minds unless special study has been made of the scientific characteristics of electricity, and of the volatile qualities of gasoline and its susceptibility to ignition by a static spark of electricity. During the present trial the attorney for the plaintiffs on many occasions propounded certain questions, which required answers by the expert witnesses, relative to the propriety and safety of certain methods of delivering gasoline through a hose from a tank to a receptacle. These questions were technically objectionable and should not have been allowed (*Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal. (2d) 525 [55 Pac. (2d) 850] ; *Parkin* v. *Grayson-Owen Co.,* 157 Cal. 41 [106 Pac. 210]), particularly in view of the fact that the same information could have been elicited by propounding questions in the usual and accepted hypothetical form. The method of propounding the questions was an infringement upon the rule that a qualified expert may not testify relative to the ultimate determination of the question of negligence, but only upon matters requiring professional or scientific knowledge or skill

not usually found within the knowledge of untrained minds. However, in the determination of prejudicial error, the test is, would the result have been different had objections been sustained and the answers excluded? The information that the answers evoked appeared in unobjectionable questions and answers in further testimony of the same or other witnesses. Under such circumstances, we cannot hold that the error was prejudicial. (*Inyo Chemical Co.* v. *City of Los Angeles, supra.*)

Appellants also complain that the trial court erred in allowing expert witnesses to express opinions based on statements of fact contrary to the evidence, namely, that the gasoline was flowing at the time the hose was taken out of the filling stem, and that gasoline was driven through the hose after the underground tank had been filled. A hypothetical question may include the theories advanced by either side if the evidence supports such theories or they could reasonably be found as inferences drawn from the evidence introduced. (*Bickford* v. *Lawson*, 27 Cal. App. (2d) 416 [81 Pac. (2d) 216]; *Graves* v. *Union Oil Co.*, 36 Cal. App. 766 [173 Pac. 618].)

The evidence in the present case tended to prove that when the hose was lifted, or an attempt made to lift it from the filling stem, some amount of gasoline was still flowing through it. In other words, that if the controlling faucet had not been shut off, the gasoline would continue to flow. If it had, as appellant Bodilly claims, the remainder of the gasoline in the hose and pipe from the tank, beyond the cut-off, would still flow, and probably finally drip into the filling stem of the underground tank. In *Graves* v. *Union Oil Co., supra,* at page 770, the court said: "Where many facts and circumstances, as in this case, are made the basis of the question, the appellate court is justified in placing much reliance upon the decision of the trial court in passing upon the sufficiency of the facts narrated in the question."

The testimony of George Fulton, a witness upon a former trial, was read. It was shown that this witness some six or seven months prior to the present trial had been in the State of Minnesota; that inquiry had been made at places in this state where he would probably have appeared had he returned to California and that none of the parties interviewed knew of his present whereabouts. Appellants ob-

jected to the introduction of this testimony on the ground that it had not been definitely ascertained that the witness Fulton was the same party for whom a search had been made, and that there was not a sufficient showing of diligence. The evidence sufficiently indicates that Fulton, witness on the former trial, and the Fulton for whom search was made in connection with the present trial, were one and the same person. The question of due diligence was a matter of discretion with the trial court. In *Cameron* v. *Ah Quong,* 175 Cal. 377, 384 [165 Pac. 961], the court said: "No absolute rule may be stated with reference to the sufficiency of the showing required to justify the introduction of a deposition or of testimony given at a former trial. (13 Cyc. 990.)" We are not prepared to say that such discretion was abused.

■ Appellants object to certain instructions wherein the phrases "care commensurate with the dangerous agency"; "if he accidentally or negligently loses possession"; "proximately contributed"; "it is more probable"; contributory negligence "on the part of plaintiffs"; damages "by reason of the injuries or death complained of" appear. The wording of these instructions cannot be approved, but when read in connection with all of the instructions we are not convinced that the jury was misled or that defendants were prejudiced in their defense.

■ An instruction upon the doctrine of assumption of risk was proposed by appellants. The applicability of the doctrine is based upon the knowledge and appreciation of a danger and the voluntary occupation of a position of danger in disregard of the use of ordinary care. In this connection the time, the place, the person, and the relationship of the parties, should be considered. It is conceivable that one person may occupy with perfect safety a position that would be dangerous to another.

In addition to cases involving the relationship of master and servant, the above doctrine has been invoked where some contractual obligation exists, such as the right upon payment of a fee to witness a performance or exhibition. Under such circumstances the doctrine is applicable to one who voluntarily assumes a position of danger (*Quinn* v. *Recreation Park Assn.,* 3 Cal. (2d) 725 [46 Pac. (2d) 144]); likewise to one who, without contract, knowingly participates in a hazardous undertaking such as riding on a fire engine making a test run

(*Grassie* v. *American LaFrance F. E. Co.*, 95 Cal. App. 384 [272 Pac. 1073]), or attempting to ride an unbroken mule (*Whalen* v. *Streshley*, 205 Cal. 78 [269 Pac. 928, 60 A. L. R. 445]). ▮ But in all cases the party must have knowledge of the existing conditions and must or should appreciate under all the surrounding circumstances the possibility of the danger involved and of the hazardous position assumed. Appellant Bodilly, as an employee of appellant Shell Company, had theretofore delivered gasoline under similar circumstances. Nothing had occurred from which could be drawn a reasonable inference that he would be negligent in the delivery on the day in question. Decedent was not an employee of the defendant Shell Company, nor a fellow employee of the defendant Bodilly. In view of the legal doctrines above referred to, the trial court was justified in refusing to give the proposed instruction.

In any event, the form of instruction here proposed by defendants was clearly objectionable under any theory of assumption of risk. It was apparently intended as a formula instruction based on the relationship of master and servant, the substance thereof being that plaintiffs were not entitled to recover damages if the accident resulted from "any risk" incident to the decedent's employment. ▮ However, in that class of cases wherein the doctrine of assumption of risk based on such relationship may be properly invoked, the rule is that an employee assumes only the risk of those dangers normally incident to the occupation in which he voluntarily engages, and does not assume the risk of such extraordinary dangers as may be created by the negligent acts of others, unless of course he participates in said negligent acts or knows or has reason to believe they are being or about to be committed. (*King* v. *Schumacher*, 32 Cal. App. (2d) 172 [89 Pac. (2d) 466].) For the same reason the proposed instruction was improper if it was intended to embody the doctrine of the so-called "hazardous risk or undertaking" cases above referred to, wherein the doctrine of master and servant does not exist.

▮ Appellants contend that the award assessed by the jury is excessive. In this respect our attention is called to the claim that the amount of $40,000 in a death case has never met with the final approval of the appellate courts in this state. The closest approach seems to have been $35,000. The

answer to this contention is that the assessment of the amount of damages is with the trier of the facts and should not be disturbed except where passion, prejudice or undue influence is shown. This case has been tried five times. On two of those trials the juries returned verdicts of $50,000 and $35,000 respectively. Under such circumstances we are not prepared to say that a $40,000 verdict is excessive. (*Albaugh* v. *Mt. Shasta Power Corp.,* 9 Cal. (2d) 751 [73 Pac. (2d) 217].)

The judgment is affirmed.

Knight, J., and Peters, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 28, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1939.