[Civ. No. 15105.   Second Dist., Div. Three.   Oct. 14, 1946.]

RALPH D. HEDDING, Appellant, v. A. R. PEARSON et al.,
Respondents.

482

Arthur Garrett for Appellant.

Stanley N. Barnes, Richard T. Drukker and Chase, Barnes & Chase for Respondents.

KINCAID, J. pro tem.—Plaintiff, appellant herein, brought this action for damages for personal injuries sustained by him through contact with a truck owned by defendant Pearson and operated by defendant Zentz as the employee of such owner. The defendants filed separate answers denying plaintiff's allegations of negligence and each set up the affirmative defense of contributory negligence on the part of plaintiff. The case was tried before a jury, which returned a verdict in favor of defendants, and from the resulting judgment plaintiff appeals.

The facts of the case are substantially without contradiction. Plaintiff was employed as a welder by Western Industrial Engineering Company. On May 31, 1943, he was directed by his foreman to perform welding work on a flat steel plate which was located in a driveway situated within the plant. The plate was so large that it extended entirely across the driveway and could not, because of its size and the crowded condition of the shop, be accommodated inside. Some 75 trucks passed through this driveway each day and plaintiff had been instructed to keep clear of such trucks when notified. Zentz, as a truck driver for Pearson, drove a truck owned by the latter to the plant of plaintiff's employer to deliver two large die castings. He signed in at the plant entrance and was directed to drive inside onto a driveway and he would be shown where to unload. He saw plaintiff lying on his side in the driveway, creating a bright light by welding something, when he first drove his truck there. He also saw plaintiff arise and step aside to let him pass, whereupon he drove his truck over the plate upon which plaintiff had been working. Upon resuming his work plaintiff was again instructed to desist in order to allow defendant's truck to back up. He stepped aside while the truck again crossed the plate in the driveway and

stopped at the point where it was unloaded. Plaintiff then returned to his welding and for the succeeding 20 to 30 minutes continuously burned his bright welding arc except for brief periods while changing welding rods. After the die castings were unloaded, Zentz mounted his truck, started his motor and proceeded forward for the purpose of leaving the premises. After he had gone about 3 feet, according to Zentz, or about 20 feet according to the testimony of plaintiff, the truck came in contact with plaintiff. Zentz heard someone "holler" and stopped his truck. The first knowledge plaintiff had that the truck was about to move forward was when he heard the motor start, whereupon he rolled over backward in an attempt to elude the truck but it ran onto his legs. From the foregoing facts it is quite evident that Zentz knew, or in the exercise of reasonable care should have known, that at the time he started his truck to leave the premises plaintiff was working in the driveway in close proximity to the front of his truck.

The primary question presented by this appeal is whether prejudicial error occurred in the instructions to the jury concerning the law relative to the defense of assumption of risk as applied to the facts herein. After instructing the jury as to the matters of negligence and contributory negligence, the following were given:

"There is a legal principle commonly referred to by the term 'assumption of risk,' which now will be explained to you:

"One is said to assume a risk when he freely, voluntarily and knowingly manifests his assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes himself to that danger, or when he knows, or in the exercise of ordinary care would know, that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself, or remains, within the area of danger.

"One who thus assumed a risk is not entitled to recover for damage caused him without intention and which resulted from the dangerous condition or conduct to which he thus exposed himself."

"Your attention is called to a distinction between contributory negligence and assumption of risk. As said elsewhere in these instructions, contributory negligence must contribute in some degree, as a proximate cause, to the happening of the accident. But assumption of risk, if it meets with the

requirements of the law as stated to you, will bar recovery for damage although it plays no part in causing the accident except merely to expose the person to danger.''

It is the contention of plaintiff that the quoted instructions are incorrect statements of law, and, even if correct under proper facts and circumstances, are prejudiciously erroneous, incomplete and misleading as applied to the evidence in the instant case.

The defenses of assumption of risk and contributory negligence are often confused. ''The distinction between the two types of defenses leads to important legal consequences.'' (Rest., Torts, vol. 4, p. 497.) As to assumption of risk, as distinguished from contributory negligence, American Jurisprudence (vol. 38, pp. 845-7), states: ''The principle that one who voluntarily assumed the risk of injury from a known danger is debarred from a recovery is recognized in negligence cases. . . . (A) plaintiff who, by his conduct, has brought himself within the operation of the maxim, 'volenti non fit injuria,' cannot recover on the basis of the defendant's negligence. In the words of the maxim as translated, 'that to which a person assents is not esteemed in law an injury.' Although there is authority for confining the doctrine of assumption of risk to cases arising out of the relation of master and servant, or at least to cases involving a contract relationship, it is now fairly well settled that the defense of assumed risk may exist independently of the relation of master and servant. The maxim, 'volenti non fit injuria,' applies in a proper case independently of any contract relation. It is said that one who knows, appreciates, and deliberately exposes himself to a danger 'assumes the risk' thereof. One cannot deliberately incur an obvious risk of personal injury, especially when preventive measures are at hand, and then hold the author of the danger for the ensuing injury. Thus, a person upon the property of another, who deliberately chooses to expose himself to danger of a patent character in the condition of the premises, which he could easily avoid with the exercise of care, may not hold the landowner liable for any resulting injuries, whatever may be the nature of his relationship to the landowner. . . .

''The defense of assumption of risk is closely associated with the defense of contributory negligence. One who does not exercise ordinary care for his own safety is said, speaking broadly, to assume the risk, that is, take the chance, of being

hurt. The defense of assumption of risk is not incompatible with contributory negligence; the two defenses may arise under the same state of facts. . . . However, there is a clear distinction between the defense of assumption of risk and the defense of contributory negligence, notwithstanding they may arise under the same set of facts and may sometimes overlap. There is a line of demarcation which, if carefully scrutinized and followed, will allow the court to differentiate between them. Assumption of risk rests in contract or in the principle expressed by the ancient maxim, 'volenti non fit injuria,' whereas contributory negligence rests in tort. The former involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas the defense of contributory negligence implies the failure of plaintiff to exercise due care. As stated in some decisions, assumption of risk is a mental state of willingness, whereas contributory negligence is a matter of conduct.'' (See, also, 45 C.J. 1043; *Landrum* v. *Roddy,* 143 Neb. 934 [12 N.W.2d 82, 149 A.L.R. 1041].)

The acts and conduct of the plaintiff herein, as reflected by the evidence, constituted at most an assumption of risk of the type included within the law relating to contributory negligence. Plaintiff's work compelled him to assume the position occupied by him at the time of the accident in question. As will be hereafter shown, the amount of care which he is compelled to exercise for his own safety under such conditions may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. ▪ *The facts as to the extent of plaintiff's knowledge of the danger, as to whether plaintiff was unreasonable in encountering the risk, and as to whether he failed to exercise due care under the existing conditions were matters which he was entitled to have considered and determined by the jury.* Instead, the jury was instructed as to a principle of law which is inapplicable to the facts, had the effect of eliminating these vital questions and of advising the jury that they might find for defendants, regardless of their wrongful conduct, so long as the injury to plaintiff was not intentionally caused by them. Such is not the law when applied to a factual situation such as is here presented. ▪ One who is necessarily working on a highway or other place where there is vehicular traffic, and is injured through the negligent operation of a vehicle, cannot be deprived of his cause of action for damages

upon the theory that he voluntarily assumed the risk of injury. Under the circumstances of plaintiff's injury, the jury could well have understood the instructions as justifying a verdict for defendants upon mere proof that plaintiff knew, or should have known, that vehicles might come his way.

If any instructions were to be given in this case on the subject of assumed risk, they should have further included a proviso that, while a person assumes the perils which are naturally incident to the position he has taken, he does not assume dangers which can come only from the negligent acts of another. (*Muskin* v. *Gerun* (1941), 46 Cal.App.2d 404, 410 [116 P.2d 105]; 19 Cal.Jur. 589, § 30.) In the case of *Gornstein* v. *Priver* (1923), 64 Cal.App. 249 [221 P. 396], the plaintiff was one of a party riding in two hired trucks. She, with others, was sitting on the truck floor in such a manner that her legs hung over the rear end. The truck in which she was riding made a sudden stop for a street car. The second truck was following the first so closely as to be unable to stop and it collided with the rear of the first truck, resulting in injury to plaintiff's legs before she had a chance to withdraw them. To defendants' contention that they were completely absolved of any liability by reason of the position of peril in which she had voluntarily placed herself, the court replied that she did not assume the risk of danger created by the negligent operation of the trucks by the drivers, saying (p. 257): "[T]hough she assumed all the risks ordinarily incident to the position in which she seated herself on the truck, whether it was known to her to be dangerous or not—such risks, for example, as might be due to the ordinary and usual swaying of the truck or its ordinary and usual movements—still she did not forfeit her right to exact from defendant and his servants the same care to which she would have been entitled had she taken the safest seat on the vehicle." To the same effect, see *Bee* v. *Tungstar Corp.* (1944), 65 Cal.App.2d 729, 733 [151 P.2d 537]; *Kersten* v. *Young* (1942), 52 Cal.App.2d 1, 9 [125 P.2d 501]; *Wilmot* v. *Golden Gate Investment Co.* (1940), 41 Cal.App.2d 664, 668 [107 P.2d 263].

In several pertinent cases the refusal of the trial court to give proposed instructions on assumption of risk was held to be proper under the facts of each case. In *Ostertag* v. *Bethlehem etc. Corp.* (1944), 65 Cal.App.2d 795 [151 P.2d 647], plaintiff was employed by an independent contractor doing

electrical work in defendant's plant. At the direction of his foreman and of his immediate superior, Schnipper, he worked with the latter on the south wall of the building installing a cable. Two overhead tracks extended between the east and west ends of the building close to the north and south walls, upon which tracks ran an electrically driven crane. Work had been suspended for three days on the south wall but men had been working on the north wall in the meantime. Knowledge of the operator of the crane or his lookout as to plaintiff's presence at the time of the accident was a fact in dispute. Plaintiff and Schnipper noticed the crane in operation at the opposite end from where they were working. They worked facing each other and at Schnipper's direction plaintiff took a position with his back to the crane and with one foot on the crane rail. After a short time Schnipper saw the crane approaching, cried a warning resulting in the stopping of the crane, but not until it had crushed plaintiff. To the contention of defendant that the foregoing facts constituted a bar to recovery by plaintiff because of his voluntary assumption of the risk of injury, the court said (pp. 801-2) : ''Respondent was a helper acting under the immediate direction of the journeyman Schnipper. At Schnipper's direction he was working with him in the place where he was injured. His work compelled him to assume a position with his back to the crane. The courts have often recognized that where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. (*Barboza* v. *Pacific Portland Cement Co.,* 162 Cal. 36, 40 [120 P. 767] ; *Roddy* v. *American Smelting etc. Co.,* 34 Cal.App.2d 457, 460-1 [93 P.2d 841] ; *Mecham* v. *Crump,* 137 Cal.App. 200, 203-4 [30 P.2d 568] ; *Woods* v. *Wisdom,* 133 Cal.App. 694, 696-7 [24 P.2d 863] ; *Jones* v. *Hedges,* 123 Cal.App, 742, 752 [12 P.2d 111] ; *Driscoll* v. *California St. R. R. Co.,* 80 Cal.App. 208, 215 et seq. [250 P. 1062].) Whether or not respondent was guilty of contributory negligence on all the facts disclosed by the evidence was a jury question.

''On the claimed assumption of risk this case is not unlike *Jones* v. *Hedges, supra,* where the argument was made that the decedent, a workman on the highway who was struck and killed by an automobile driven into a dense cloud of smoke caused by hot oil being sprayed upon the pavement by a road construction crew of which decedent was a member, had

assumed the risk of such injury. This court, in the Jones case, pointed out that the decedent was in the performance of his duties under the direction of his foreman and held that 'in a controversy between Jones or his heirs and a driver exercising ordinary care, Jones might be regarded as having assumed the usual risks incident to his employment; but he cannot be held to have assumed the risk of death through the *negligent propulsion* of an automobile upon him.' Indeed it is unthinkable that a workman performing services for an independent contractor on the premises of another, under the direction of his superior and at the place where such services under the contract must necessarily be performed, should be held to have assumed the risk of injury by the negligent act of the owner of the premises or of the owner's agent or employee. As stated in *DeGraf* v. *Anglo California Nat. Bank*, 14 Cal.2d 87, 99-100 [92 P.2d 899]:

" 'But, even conceding the applicability of the doctrine of "assumed risk" to the instant case, it is clear, with reference thereto that the determinative question was whether, in consideration of all the circumstances, plaintiff conducted himself as a reasonable and prudent person.'

"The refusal of the court to give appellant's proposed instructions on assumption of risk was proper under the facts of this case."

Another case to the same general effect wherein the refusal of the trial court to instruct the jury as to assumption of risk was upheld is *Weaver* v. *Shell Co.* (1939), 34 Cal.App.2d 713 [94 P.2d 364]. There the plaintiff was employed at a gasoline filling station where the defendant, through its employee, was delivering a tank load of gasoline to its customer, plaintiff's employer. By reason of the claimed negligence of defendant an explosion occurred, the gasoline was ignited and plaintiff was burned. The court said (pp. 721-2): "An instruction upon the doctrine of assumption of risk was proposed by appellants. The applicability of the doctrine is based upon the knowledge and appreciation of a danger and the voluntary occupation of a position of danger in disregard of the use of ordinary care. In this connection the time, the place, the person, and the relationship of the parties, should be considered. It is conceivable that one person may occupy with perfect safety a position that would be dangerous to another.

"In addition to cases involving the relationship of master and servant, the above doctrine has been invoked where some contractual obligation exists, such as the right upon payment

of a fee to witness a performance or exhibition. Under such circumstances the doctrine is applicable to one who voluntarily assumes a position of danger (*Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725 [46 P.2d 144]); likewise to one who, without contract, knowingly participates in a hazardous undertaking such as riding on a fire engine making a test run (*Grassie* v. *American LaFrance F. E. Co.*, 95 Cal.App. 384 [272 P. 1073]), or attempting to ride an unbroken mule (*Whalen* v. *Streshley*, 205 Cal. 78 [269 P. 928, 60 A.L.R. 445]). But in all cases the party must have knowledge of the existing conditions and must or should appreciate under all the surrounding circumstances the possibility of the danger involved and of the hazardous position assumed. Appellant Bodilly, as an employee of appellant Shell Company, had theretofore delivered gasoline under similar circumstances. Nothing had occurred from which could be drawn a reasonable inference that he would be negligent in the delivery on the day in question. Decedent was not an employee of the defendant Shell Company, nor a fellow employee of the defendant Bodilly. In view of the legal doctrines above referred to, the trial court was justified in refusing to give the proposed instruction.'' (See, also, *Pollard* v. *Foster* (1942), 54 Cal.App.2d 502, 505 [129 P.2d 448]; *Graff* v. *United Railroads of San Francisco* (1918), 178 Cal. 171, 176 [172 P. 603]; *Roberts* v. *Sierra Railway Co.* (1910), 14 Cal.App. 180 [111 P. 519, 527].)

Since the instructions which were given the jury on the subject of assumption of risk by the plaintiff were inapplicable to the facts in this case, the giving of them was improper. Without them the jury, in the light of a consideration of the entire case, might well have taken into consideration the additional factors, previously alluded to and italicized, and have come to a different conclusion from that reached by them. Such being the case, they were prejudicial to the plaintiff's cause and constitute grounds for reversal. (*Aurenz* v. *Los Angeles Ry. Corp.* (1937), 19 Cal.App.2d 401, 403 [65 P.2d 910]; *Aurenz* v. *Los Angeles Ry. Corp.* (1939), 35 Cal.App.2d 615, 617 [96 P.2d 397]; *Scandalis* v. *Jenny* (1933), 132 Cal. App. 307, 313 [22 P.2d 545]; *Buttrick* v. *Pacific Elec. Ry. Co.* (1927), 86 Cal.App. 136, 139 [260 P. 588].)

The judgment is reversed and the case remanded for a new trial, appellant to recover his costs on appeal.

Desmond, P. J., and Shinn, J., concurred.